WILL G. KNOX, RECEIVER, V. R. F. BALL ET AL.

No. A-506. Decided November 28, 1945.
Rehearing overruled January 9, 1946.
(191 S. W., 2d Series, 17.)

404

*Devereaux Henderson,* of Houston, for petitioner.

*Cole, Patterson, Cole & McDaniel, J. W. McDaniel* and *Robert L. Cole, Sr.,* all of Houston, for respondents, Standard Accident Insurance Company and R. F. Ball.

*Albert J. DeLange,* of Houston, for Houston Housing authority.

MR. JUSTICE FOLLEY delivered the opinion of the Court.

This suit was filed by the petitioner, Will G. Knox, as receiver of United Employers Casualty Company, against R. F. Ball individually and his successor in business, R. F. Ball Construction Company, as general contractors, the Housing Authority of the City of Houston, W. F. Warfield & Company, Inc., as subcontractor, and the respective sureties on the contractors' and subcontractors' bonds, namely, the National Surety Corporation of New York and Standard Accident Insurance Company of Detroit, seeking recovery for unpaid premiums on certain workmen's compensation and public liability insurance policies which were issued by United Employers Casualty Company to the subcontractor, W. F. Warfield & Company, Inc., in connection with the construction of certain housing projects in the City of Houston under the correlated Federal and State Housing laws. 40 U. S. C. A. sec. 290; 42 U. S. C. A. secs. 1416 et seq.; Art. 1269k, V. A. C. S.

The trial court sustained certain special exceptions to petitioner's pleadings and, upon his refusal to amend, entered an interlocutory order dismissing the suit against all adverse parties except W. F. Warfield & Company, Inc. The cause proceeded to trial between partitioner and the latter company and judgment was rendered against it for the insurance premiums, and other items not here material, but no recovery was allowed against the other defendants. The subcontractor, W. F. Warfield & Company, Inc., became insolvent and no appeal was prosecuted from the judgment against it. The petitioner appealed from that portion of the decree adverse to him, and the court of civil appeals affirmed the judgment, (185 S. W. (2d) 124) thus holding the pleadings insufficient to state a cause of action against any of the other defendants. There is no statement of facts in the record and the factual matters hereinafter stated are from the pleadings only.

From the allegations of petitioner it appears that at the inception of this controversy R. F. Ball was a general contractor operating under the firm name of R. F. Ball Construction Company, which business was later incorporated under the same name, and the corporation succeeded to the rights, duties and liabilities of its predecessor in business. On August 25, 1939, the Housing Authority entered into a written contract with R. F. Ball for the construction of a low-rent housing project in the City of Houston known as the Cuney Homes. The contract was financed by the Federal Agency, the United States Housing Authority, through the purchase of bonds issued by the Housing Authority of the City of Houston. The plans, specifications, conditions and requirements of the contract were prescribed by the Federal Agency. The contract required the contractor to furnish a satisfactory performance and payment bond and a surety bond as security for the faithful performance of the contract and for the payment of all persons performing labor and furnishing materials in conncction with the contract.

The following additional provisions were embodied in the contract:

"The contractor shall furnish all labor, materials, equipment, appliances, services and things required for the execution, performance and completion of all work or improvement or development necessary to the completion of the project in accordance with the drawings and the specifications.

"It is understood that except as otherwise specifically stated in the contract documents, the contractor shall provide and pay

for all materials, labor, tools, equipment, water, light, power, transportation, superintendence, temporary construction of every nature, all other services, facilities, and costs of every nature, whatsoever necessary to execute and complete the entire work to be done under the contract documents and deliver it complete in every respect."

In the "General Conditions" of the "Contract Documents" it was further provided that the general contractor should carry workmen's compensation insurance for all employees engaged in the work on the project and also carry public liability insurance to protect the contractor against claims for personal injuries and death which might occur on the project. It was further stipulated that if any part of such contractor's contract was sublet the contractor should require his subcontractor to maintain such compensation and public liability policies. The contractor also agreed to be as fully responsible to the local authority for the acts and omissions of subcontractors as he was for acts and omissions of persons directly employed by him.

In accordance with the terms of the general contract the original contractor as principal, and the National Surety Corporation of the City of New York as surety, entered into a bond, the material portions of which are as follows:

"Know all men by these presents that we, R. F. Ball, of Fort Worth, Tarrant County, Texas, operating under the firm name R. F. Ball Construction Company, hereinafter called Principal and National Surety Corporation of the City of New York, State of New York, hereinafter called Surety, are held and firmly bound unto the Housing Authority of the City of Houston, Texas, of Houston, Harris County, Texas, hereinafter called Owner, and unto all person-, firms and corporations who may furnish materials for, or perform labor upon the building or improvements hereinafter referred to, in the penal sum or Five Hundred Seventy-four Thousand, Two Hundred Fifteen Dollars ($574,215.00) in lawful money of the United States, to be paid in Harris County, Texas, for the payment of which sum, well and truly to be made, we bind ourselves, our heirs, executors, administrators and successors, jointly and severally, firmly by these presents.

"The condition of this obligation is such that whereas, the Principal entered into a certain contract with Housing Authority of the City of Houston, Texas, the owner, dated the 25th day of August, A. D. 1939, a copy of which is hereto attached and made a part hereof, for the construction and completion of a

low-rent housing project identified as Project Tex 5-1, to be located in the City of Houston, Harris County, Texas, and consisting principally of one (1) Administration-Social Center Building and three hundred sixty (360) dwelling units contained in sixty-two (62) dwelling buildings, and including the construction and completion of all structures, plumbing, heating, electrical, site development, and land-scaping incident thereto.

"Now, therefore, if the principal shall well, truly and faithfully perform all the undertakings, covenant, terms, conditions and agreements of said contract during the original term thereof and any extensions thereof which may be granted by the Owner, with or without notice to the Surety, and if he shall satisfy all claims and demands incurred under such contract, and shall fully indemnify and save harmless the Owner from all costs and damages which it may suffer by reason of failure to do so, and shall fully reimburse and repay the owner all outlay and expenses which the owner may incur in making good any default, and shall promptly make payment to all persons, firms, subcontractors, and corporations furnishing materials for or performing labor in the prosecution of the work provided for in such contract, and any authorized extension of modification thereof, then this obligation shall be void; otherwise to remain in full force and effect.

"Provided further that no final settlement between the owner and the contractor shall abridge the right of any beneficiary hereunder, whose claim may be unsatisfied."

On September 8, 1939, the general contractor entered into a subcontract with W. F. Warfield & Company, Inc., whereby the subcontractor was hired to perform for the general contractor, and under his supervision, all the obligations of the general contract respecting items of paving, underground utilities and miscellaneous accessories. The subcontractor agreed to furnish all labor, material, tools, equipment, and all other incidentals necessary to complete its part of the work. The subcontract specifically bound the subcontractor for all the terms and provisions of the general conditions and specifications in the same manner that the general contractor was bound to the Housing Authority. It further provided that the subcontractor should carry workmen's compensation and public liability insurance and furnish the general contractor with a bond guaranteeing the faithful performance of all the provisions of the subcontract.

In accordance with the terms of both contracts the W. F. Warfield & Company, Inc., as principal, and the Standard Ac-

cident Company, as surety, entered into a bond, the material portions of which are as follows:

"Know all men by these presents, That W. F. Warfield & Company, as Principal, the same being designated as Contractor in the foregoing contract, and Standard Accident Insurance Company, as surety, are held and firmly bound unto R. F. Ball Construction Company of Fort Worth, in the sum of Fifty Seven Thousand Dollars ($57,000.00) Dollars, lawful money of the United States of America, to be paid to said R. F. Ball Construction Company, their certain attorney, successor or assigns; to which payment well and truly to be made the said principal and said surety bind themselves, their heirs, executors, successors and assigns, jointly and severally, by these presents.

"The condition of the above obligation is such that whereas, R. F. Ball Construction Company, upon the faith and credit of this bond, has entered into the foregoing contract with the above named principal.

"Now, therefore, if the said Principal shall well, truly and faithfully keep and perform;—all of the terms, provisions, covenants and conditions of the foregoing contract, including changes or additions, if such be made, not exceeding in extra cost fifty per cent of the original gross consideration, as named in the foregoing contract (the said surety hereby expressly waiving all rights to be notified of, or by any further act to give assent to such changes and additions, within the limits of such cost aforesaid) ; and shall repay said R. F. Ball Construction Company all costs and expenses said R. F. Ball Construction Company may incur in the prosecution of any suit or suits which they may maintain against said Principal on account of any breaches of said contract or of this bond; then, this obligation shall be void; otherwise, the same shall remain in full force and virtue."

In connection with the work, and pursuant to the agreements, the United Employers Casualty Company issued certain policies of workmen's compensation and public liability insurance to the subcontractor, W. F. Warfield & Company, Inc. The unpaid premiums for such insurance total the sum of $1674.72, the amount here in controversy. Petitioner alleged that the policies were executed for the benefit of both the original contractor and the subcontractor, and that they were delivered to and duly accepted and ratified by each of such contractors.

In view of the above allegations, and the ruling of the lower courts thereon, it becomes necessary for us to determine whether

a cause of action was alleged by petitioner against the original contractor and the two surety companies. By the term "original contractor" we refer to R. F. Ball individually and also to the R. F. Ball Construction Company, the latter having succeeded to the rights and liabilities of the former. Under the allegations no liability was shown to exist against the Housing Authority. The liability of the W. F. Warfield & Company, Inc., the sub-contractor, was determined by the final judgment against it about which no party now complains. In passing upon the questions presented we wish it clearly understood that we make no holdings as to the rights and liabilities of the respective trial court defendants as between themselves. Such matters are not before us.

■ It is the rule that a person not a party to a contract may enforce it if it appears that it was made for his benefit; however, the presumption is that parties contract only for themselves, and a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties. Citizens Nat. Bank in Abilene v. Texas & P. Ry. Co., 136 Texas 333, 150 S. W. (2d) 1003; 12 Am. Jur. 833, Sec. 281; 17 C. J. S. 1131, Sec. 519.

■ The rule also seems to prevail generally that in the absence of an express assumption of liability, or of a statute expressly imposing such liability, the surety on a contractor's bond is not liable for workmen's compensation or liability insurance, the same not coming within the provision of a bond covering indebtedness for labor and material. 173 Okla. 493, 49 Pac. (2d) 103, 102 A. L. R. 135, and authorities there cited.

■ We have no statute in this state expressly imposing such liability on a surety. Therefore, in determining the question before us we must examine the two surety bonds and the contracts which they secure to ascertain and give effect to the intention of the parties as expressed in the language they have used.

■ We shall first direct our attention to the subcontractor's bond executed by the Standard Accident Insurance Company as surety. It will be noted that the only named payee in the bond is the R. F. Ball Construction Company, the original contractor. It is in the ordinary form, that is, a promise to pay a certain sum, followed by a defeasance clause which merely expresses the conditions for a breach of which the principal and surety would become liable to the original contractor. The contract is not made a part of the bond. Other than in the defeas-

ance clause there is no recital in the bond that it was executed to guarantee the performance of the contract. The only reference therein to the terms and covenants of the contract is confined to the condition upon which the liability is defined and for breach of which liability will arise. The bond contains no expression of an intention that it shall inure to the benefit of third parties. It contains no broad and comprehensive language indicating that it was intended to embrace more than a guarantee of the faithful performance of the contract as between the original parties. If it might be construed as guaranteeing the payment of the insurance, under our view of this case such covenant was necessary for the protection of R. F. Ball Construction Company, the payee, and would thus be presumed only for its benefit unless other broader language to the contrary appeared in the bond, which is not the case. It thus appears to have been executed exclusively for the benefit of the R. F. Ball Construction Company. That such a bond is one of indemnity for the protection of the payee, and not for the benefit of third parties, is well established in this state. It is in the identical language of the bond involved in Employers Liability Assur. Corporation v. Trane Co., 139 Texas 388, 163 S. W. (2d) 398, and is governed by the principles therein announced, and in other cases of similar nature. National Bank of Cleburne v. Gulf, C. & S. F. Railway Co., 95 Texas 176, 66 S. W. 203; Standard Accident & Insurance Co. v. Blythe, 130 Texas, 201, 107 S. W. (2d) 880; Oak Cliff Lumber Co. v. American Indemnity Co., Tex. Civ. App., 266 S. W. 429; General Bonding & Casualty Ins. Co. v. Waples Lumber Co., Tex. Civ. App., 176 S. W. 651; Maryland Casualty Co. v. Dave Lehr, Inc., Tex. Civ. App., 110 S. W. (2d) 921.

In the Trane case this court recognized a well-known exception to the rule that such a bond is only for the protection of the payee named therein. Such exception is that if the provision of the defeasance clause for payment of claims is not necessary for the protection of the payee, the bond may be construed as intended for the benefit of third parties. Mosher Mfg. Co. v. Equitable Surety Co., Tex. Com. App., 229 S. W. 318; American Employers Ins. Co. v. Roddy, Tex. Com. App., 51 S. W. (2d) 280; Wm. Cameron & Co. v. American Surety Co. of New York, Tex. Com. App., 55 S. W. (2d) 1032; Metropolitan Casualty Ins. Co. v. Texas Sand & Gravel Co., 68 S. W. (2d) 551. This exception has no application here.

The other bond in which R. F. Ball Construction Company is principal and National Surety Corporation is surety is distinguishable from the bond of the subcontractor. It shows on

its face that it was not made exclusively for the benefit of the Housing Authority. The promise to pay the stated sum in the first paragraph of the bond not only includes the Housing Authority as payee but "all persons-, firms and corporations who may furnish materials for, or perform labor upon the building or improvements." It will be further noted that the contract is expressly made a part of the bond. As above stated, the contract thus incorporated in the instrument provides that the contractor shall carry the workmen's compensation insurance for all employees engaged in the work and public liability insurance for the protection of the contractor against claims for personal injuries and death occurring on the project. It also stipulates that the contractor shall provide and pay for all materials, labor, tools, equipment, etc., and all other services, facilities, and costs of every nature whatsoever necessary to execute and complete the entire work to be done under the contract documents. It further provides that if any part of the contract is sublet the original contractor shall require his subcontractor to maintain such insurance, and that the original contractor shall be as fully responsible to the Housing Authority for the acts and omissions of subcontractors as he is for the acts and omissions of persons directly employed by him. The original contractor thus agreed to purchase the insurance at his own expense or cause the same to be done by the subcontractor, and in either event he guaranteed the payment of the premiums.

After embodying all these provisions of the contract in the bond, the defeasance clause proceeds to set out the conditions upon a breach of which liability shall arise. It states that there shall be no liability "if the principal shall well, truly and faithfully perform all the undertakings, covenent terms, conditions and agreements of said contract * * * and if he shall satisfy all claims and demands incurred under such contract."

To our minds these circumstances clearly manifest an intention to include the insurance carrier as one of the beneficiaries in the bond. One of the covenants of the original contract was to pay the premiums for the insurance. His failure to do so unquestionably constituted one of the "claims and demands incurred under such contract." Unlike the covenant, if any, in the bond of the subcontractor as to insurance, the agreement here to pay for the insurance was not necessary for the protection of the Housing Authority, the principal payee in the bond. Such Authority was not obligated for the premiums and therefore could not have been the beneficiary intended. The only party for whose benefit it might have been made was the insurance carrier.

Similar undertakings in bonds have been held to create liability for insurance premiums in this and other jurisdictions. B. F. & C. M. Davis Co. v. W. E. Callaghan Const. Co., Tex. Com. App., 298 S. W. 273; Merchants Mut. Cas. Co. v. United States Fidelity & Guaranty Co., 253 App. Div. 151, 2 N. Y. S. (2d) 370; McFarland v. Rogers, 134 Me. 228, 184 Atl. 391; Building Contractors' L. M. L. Ins. Co. v. Southern Surety Co., 185 Wis. 83, 200 N. W. 770. In all the cases cited the contractor was required to carry the insurance and the bonds contained language similar to that of the instant case.

In the Callaghan case the condition of the bond was that the principal should "pay all sums of money due, and to become due, for supplies, teams, equipment, material, and labor used, or contracted to be used, in the performance of said contract, *as well as any and all other expense incurred in the performance or attempted performance thereof.*" (Italics ours.)

In the New York case (253 App. Div. 151, 2 N. Y. S. (2d) 372) the surety undertook to guarantee the payment of "* * * all lawful claims of subcontractors, materialmen or other third persons arising out of or in connection with said contract or other work performed thereunder, * * *."

In the Maine case (134 Me. 228, 184 Atl. 391) the surety guaranteed that the contractor should faithfully perform the contract and "satisfy all claims and demands incurred for the same and shall pay all bills for labor, equipment, and all material except pipe, and for all things contracted for or used by him in connection with the work contemplated by said contract * * *."

In the Wisconsin case (185 Wis. 83, 200 N. W. 771) the surety guaranteed that "* * * the principal shall faithfully perform the contract on his part and satisfy all claims and demands incurred for the same."

The language used in the original contractor's bond, particularly that guaranteeing that such contractor would "satisfy all claims and demands incurred under such contract," is as broad and comprehensive as that employed in any of the cases cited, and is certainly no less onerous. It is clearly analogous to that used in the Callaghan case wherein the holding as to liability was expressly approved by this court.

■ It is insisted by respondents that the insurance carrier is excluded as a beneficiary in the bond because in the first para-

graph thereof those who furnish labor or materials are expressly designated as payees. This contention we think is untenable. The doctrine of expressio unius est exclusio alterius is an applicable in this connection for very obvious reasons. It must be remembered we are dealing with the right of a third party to sue upon a bond, a party not designated as a payee therein. Those who perform labor or furnish materials are not third parties but payees in this bond the same as the Housing Authority, and there is no more reason to deny the claim for the insurance because they are named as payees than because the Housing Authority is so designated. To apply this maxim in this instance would be tantamount to announcing that, regardless of the intention of the parties, no one could recover on a bond unless he is specifically named as a payee or beneficiary. This would be diametrically opposed to the doctrine that a person not named as a party to a contract may sue thereon if it appears it was made for his benefit.

■ We are also of the opinion that the principle of ejusdem generis, urged by respondents, has no application in this respect. That doctrine arises only where words of a particular description are followed by words of general description, in which event the latter will be regarded as referring to the same nature or class as the former. No such condition exists here. We simply have parties of a particular description designated as payee without reference to others of any nature or class. The mere fact that certain parties are designated as beneficiaries in one paragraph of the bond does not mean that others might not be so denominated in other portions of the bond. In this connection, no particular formality is required for such designation. Any form is sufficient if it clearly expresses the intention of the parties. "It is not necessary that the person to be benefited by the contract be named therein, if he is otherwise sufficiently described or designated, and the fact that the particular person who is to benefit from the promise is not known when the promise is made is immaterial, if he can be identified. He may even be one of a class of persons if the class is sufficiently described or designated." 17 C. J. S. 1131, Sec. 519.

We also do not agree with the court of civil appeals that the original contractor's performance bond is of the same character as that of the original contractor, Vincent Falbo & Sons, in Standard Acc. Ins. Co. v. Knox, 144 Texas 296, 184 S. W. (2d) 612, nor that it is governed by the principles therein announced. There was no language in the Falbo bond whereby the surety guaranteed the payment of "all claims and demands incurred under such contract." On the contrary the obligation

to indemnify was to pay "all sub-contractors, workmen, laborers, mechanics and furnishers of materials all moneys to them owing by said Vincent Falbo & Sons for sub-contracts, work, labor and material done and furnished for the construction of such improvements * *." Such obligation did not include the insurance premiums. It is doubtful, however, if this dissimilarity standing alone is sufficient to distinguish the two bonds, and we do not so hold. There was other affirmative language in the Falbo bond indicating the surety would guarantee the performance of all the covenants, conditions and agreements of the contract according to the true intent and meaning of the contract, plans and specifications thereto annexed, one of which was the payment of the insurance premiums. This difference in the language of the two bonds becomes important only in its relation to the second dissimilarity, which is that the Falbo bond, unlike that of this case, specifically stated that it was made for the use and benefit of those who might furnish materials or perform labor upon the work and that each of such persons might sue on the bond. This provision likewise failed to include the insurance premiums. More than that, it removed all doubt and speculation as to the beneficiaries who might sue upon the bond. It clearly revealed the intention of the parties in this respect and no other language contained in the bond was sufficient to overcome or defeat this expressed intention of the parties. In such instance the doctrine of expressio unius est exclusio alterius was applicable and excluded the insurance carrier as a beneficiary.

We have no such provision in the original contractor's bond before us. The mere designation of certain payees in the bond in addition to the Housing Authority is vastly different from a specific provision stating who shall be beneficiaries and who may sue on a bond. In other words, where certain persons or classes are named as payee in a bond it is not conclusive that the contract was not also intended for the benefit of others not so named; but where the contracting parties not only designate the payees in the bond but stipulate that the ones named shall constitute the beneficiaries who may sue thereon, it impels the thought that the parties intended to limit the field to those so designated. This invokes the principle that where a contract expressly provides that it is for the benefit of the promisee and no one else, a third person may not sue thereon even though he might otherwise come within its terms as a beneficiary. Ideal Brick Co. v. Gentry, 191 N. C. 636, 132 S. E. 800; Morganton . Mfg. & Trading Co. v. Andrews, 165 N. C. 285, 81 S. E. 418; 17 C. J. S. 1131, Sec. 519; Am. Cas. 1916A 763. We therefore conclude that the rules governing the former case have no application here.

From what we have said it follows that we think a cause of action was pleaded against R. F. Ball, the R. F. Ball Construction Company, and the National Surety Company of the City of New York, but that none was pleaded against the other respondents.

The judgments of both courts below sustaining exceptions to the pleadings of petitioner with reference to the parties named, and adjudging no liability against them, are reversed and remanded to the trial court for a new trial in accordance with this opinion. In all other respects the judgments are affirmed.

Opinion delivered November 28, 1945.

Rehearing overruled January 9, 1946.