SOUTHERN FARM BUREAU CASUALTY INS. CO. *v.* ROBINSON.

5-2885                                           365 S. W. 2d 454

Opinion delivered March 11, 1963.

*Cockrill, Laser, McGehee & Sharp,* for appellant.

*Murphy & Arnold,* for appellee.

JIM JOHNSON, Associate Justice. On August 22, 1956, appellant Southern Farm Bureau Casualty Insurance Company issued its automobile liability policy to Forrest B. Booth. The policy was in effect on May 28, 1958, when Booth had an automobile accident in Illinois. At the time Booth was driving the car and appellee Bartis Robinson was a passenger. Robinson was injured and hospitalized. Booth returned to Arkansas.

On June 30, 1958, Robinson filed suit against Booth in Illinois and on July 15, 1958, Booth received in Arkansas by registered mail a notice of the action and a copy of the process. There is evidence, controverted, that Booth did not forward the suit papers to appellant until October 10, 1958, and that it was not until September 16, 1958, that appellant learned of the Illinois action as a result of a telephone call from Robinson's attorneys. Appellant took a non-waiver agreement from Booth on October 9, 1958, and then answered, entering his appearance in the Illinois action. Thereafter on October 21, 1958, appellant filed a declaratory judgment action against Booth in the United States District Court, Eastern District of Arkansas, Northern Division, in which action appellant alleged that Booth did not deliver the suit papers to appellant as required by his policy and therefore it was not liable under the policy.

Booth did not answer appellant's complaint, and on January 6, 1959, a judgment by default was entered against Booth. On February 7, 1959, appellee filed a motion in the United States District Court to set aside the judgment and allow him to defend, which was denied.

On February 13, 1959, appellant obtained permission of the Illinois court to withdraw the answer its Illinois attorneys had filed for Booth, and Booth was given notice thereof and time in which to employ counsel and defend the action if he so desired. Booth did not file an answer, and on September 13, 1960, Robinson took a default judgment against Booth in the amount of $20,-000.00 in the Illinois action. Thereafter on January 2, 1961, appellee reduced his Illinois judgment against Booth to an Arkansas judgment and an execution was issued against Booth which was returned unsatisfied.

Having exhausted his remedies against Booth, appellee then filed this suit directly against appellant in the Independence Circuit Court under the authority of Ark. Stats. § 66-526.

At trial the jury awarded appellee $5,000.00 damages, $818.94 medical expenses, no interest, and costs of $71.90. The trial court entered its judgment on October 27, 1961, for the amount of the jury award, together with interest on the Illinois judgment until it was reduced to an Arkansas judgment, interest on the Arkansas judgment, the statutory penalty, attorneys fees and costs against appellant. For reversal of that judgment, appellant relies on four points, each of which we shall consider separately.

I

"The trial court erred in holding that the judgment of the United States District Court was not conclusive of the single factual issue in the instant action."

Restated, this question is, "Can a default declaratory judgment between an insurer and an insured, instituted while suit is pending in a foreign jurisdiction between the insured and an injured person, which suit the insurer is defending, destroy the rights of the injured person who was not a party to the declaratory judgment proceedings?"

When the United States District Court denied appellee's motion to set aside the judgment and allow appellee to intervene and answer, the District Court filed a

Memorandum Opinion denying the motion for lack of timeliness, in which the Court stated in part:

"Aside from that, however, I would give serious consideration to granting the motion, notwithstanding the movant's lack of diligence if I felt that there was any real likelihood of his being seriously prejudiced in a subsequent action against the company on account of the entry of the default judgment. I do not believe, however, that there is any substantial danger of such prejudice. The movant has never been a party to this action and is not bound by the judgment; in my opinion he will be perfectly free, should he ultimately obtain a judgment against the insured, to litigate with the company the question of whether the insured complied with the requirements of the policy. *Allstate Insurance Co.* v. *Thompson*, D. C., Ark., 121 F. Supp. 696, 702-3."

The manifest purpose of the "direct action statute" (Ark. Stats. § 66-526) is to protect the rights of the injured and not the rights of the insurer or the insured. The rights of the injured arose at the time of the injury, 46 C.J. S., § 1191, p. 122, and are antagonistic to the rights of both the insurer and the insured. Under the facts here presented, it cannot be said that the insured and appellee were in privity with each other either in law or in fact.

On the specific point here in question, Professor Appleman in his comprehensive works, Insurance Law and Practice, vol. 20, § 11371, states what appears to be the general rule as follows:

"Persons who have been injured in an automobile accident are certainly proper parties to a suit by the liability insurer to determine coverage of its policy and the better rule would seem to be that they are both proper and necessary parties to the maintenance of the suit. Hence, it would be error to dismiss such person from the declaratory judgment suit ... However, if the court does not or cannot secure jurisdiction over them their rights cannot be destroyed by their non-appearance; nor can such rights be determined where they are not made parties to the suit."

The rationale of this rule is sound and since the specific question here presented appears to be a case of first impression in this jurisdiction, we adopt it as our own.

Applying the rule as adopted to our consistent literal construction of the Arkansas Declaratory Judgment Act (Ark. Stats. § 34-2501, *et seq.*), ''When the declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding,'' *Johnson* v. *Robbins,* 223 Ark. 150, 264 S. W. 2d 640; *Laman, Mayor,* v. *Martin,* 235 Ark. 938, 362 S. W. 2d 711; we conclude that the U. S. District Court's declaratory judgment was not res judicata as to appellee who was not a party to the action.

## II.

''The trial court erred in refusing to grant appellant's motion for a directed verdict on the ground that there was no substantial evidence that insured Booth complied with the policy provisions requiring immediate delivery to the company of suit papers.''

The policy provision here referred to is Section 3 of the Conditions of the policy:

''3. Insured's Duties. The insured, or someone on his behalf, shall as soon as practicable after an accident or loss:

(a) give written notice to the Company containing all particulars;

\* \* \*

(c) immediately deliver to the Company all papers in connection with any claims or suits; . . . ''

Appellant forcefully argues that Booth's own testimony relative to delivery of the suit papers to the company in compliance with the policy provision was such as to fall short of fulfilling the requirement that it be substantial in nature. It is true that Booth's testimony was generally contradictory, however he consistently main-

tained that he "showed" the papers to appellant's agent shortly after receiving them. Be that as it may, the policy provides that notice shall be given by the insured, or someone on his behalf. There is substantial evidence that appellant received notice of the suit and that it was not prejudiced by delay in receiving such notice. Appellee's Illinois attorney, William C. Murphy, testified that he was retained by appellee on June 8, 1958, and that on June 16, 1958, he wrote appellant's agent about appellee's claim. He exhibited a copy of his letter and the signed receipt. Suit was filed in Illinois on June 30th and service perfected on July 7th. In the meantime appellant employed, on June 24th, an Illinois claims adjusting agency, who called on appellee's attorney on June 26, 1958. Right after Labor Day, 1958, Mr. Murphy called appellant's agent about the pending suit and at his suggestion called the Little Rock office of appellant. He followed up this conversation with a letter to the Little Rock office dated September 17, 1958. On October 1, 1958, Mr. Murphy sent appellant a notice that he would present the matter for default judgment on October 11, 1958. On October 8, 1958, Edwards Streit, also an Illinois attorney, contacted Mr. Murphy stating that he represented appellant, and on that same date Mr. Murphy wrote Mr. Streit that he would do nothing further on the case until he was advised whether appellant was declining coverage or was accepting coverage. On November 1, 1958, Mr. Streit called Mr. Murphy and advised him that appellant was in the case all the way.

Thereafter on November 17, 1958, appellant filed an answer, but then on February 13, 1959, appellant withdrew its answer.

In *M. F. A. Mutual Ins. Co.* v. *White,* 232 Ark. 28, 334 S. W. 2d 686, concerning a similar policy provision, this court held:

"The purpose of the stipulation in the policy was to afford the insurance company an opportunity to control the litigation and interpose a defense against the claim on the merits of the case. Since the first action was dismissed without prejudice there was no judgment,

no payment, and no liability against appellant was sought; hence, it is clear that there was no breach of the conditions of the policy by failure of appellee to give notice of the first suit.''

In that case, the first suit brought by the injured party was dismissed voluntarily and without prejudice even though she was entitled to a default judgment when she discovered that the insured had not given the insurer notice of the suit, and then immediately filed an identical suit. The insured complied with policy provisions on the second suit. In the case at bar, appellant had ample opportunity to investigate the case and interpose a defense, and the testimony is uncontroverted that appellant did both investigate the claim and interpose a defense. The state of the record being thus, we find that the trial court properly denied appellant's motion for a directed verdict and properly submitted the question of compliance with the policy provisions to the jury.

### III.

''The trial court erred in refusing to instruct the jury that appellee's rights under appellant's policy were no greater than the rights of its insured, Forrest B. Booth.''

Appellant objected to the trial court's deletion of the following words from an offered instruction: ''You are further instructed that the rights of the plaintiff are no greater than the rights of Booth.''

The record reveals that in the first and second paragraphs of appelant's answer, appellant admitted that appellee ''is entitled to recover *in his own right* for all medical expenses incurred within one year after the date of the accident,'' and then denied that it is indebted to appellee in any manner under the policy except for the medical payments. This is inconsistent with the offered instruction. Appellant's answer concedes that appellee's rights were greater than Booth's, if only for the medical expense coverage, which disposes of the necessity of our reaching the question of whether Booth

had, at the time of the present trial, lost his rights by the default judgment rendered against him in the U. S. District Court.

## IV.

"The trial court erred in rendering judgment for appellee for certain interest despite the verdict of the jury refusing to award interest."

Before retiring, the jury was instructed in part as follows:

"I will hand you three forms of verdict; the first one reads: 'We, the jury, find for the plaintiff, Bartis Robinson, and fix his recovery as follows: Coverage A, $5,-000.00; Coverage C, $818.94; Interest,' and there you will find a dollar sign and a blank where you would insert whatever amount you agreed upon, "Costs, $71.90.'

"The second form of verdict reads: 'We, the jury, find for the plaintiff, Bartis Robinson, for his medical expenses only under Coverage C and in the amount of $818.94."

"The third form of verdict: 'We, the jury, find for the defendant, Southern Farm Bureau Casualty Insurance Company.' "

The jury returned with the first verdict, signed by nine jurors, but with the interest left blank. In response to a question, the court advised the jury that they did not have to include interest. The attorneys for both parties objected to this instruction, on different grounds. The jury retired and then returned with the verdict form marked, "No. int.", signed by all twelve jurors.

Appellee's complaint prayed for interest on the full $20,000.00, in accordance with Paragraph 3 of the policy under its "insuring agreement" which provides:

"(b) All expenses of the company, all costs taxed against the insured in any suit and all interest accruing after entry of judgment and until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon."

In our view, this provision provides for interest on the entire judgment until tender has been made of an amount up to the policy limits. 76 A.L.R. 2d 983. There is no showing that tender has ever been made even of the medical payments which appellant admits it owes.

Arkansas Statutes § 29-124 provides as follows:

"Creditors shall be allowed to receive interest at the rate of six [6] per cent per annum on any judgment before any court or magistrate authorized to enter up the same from the day of signing judgment until the effects are sold or satisfaction be made; . . . "

From the mandatory wording of this statute, it is apparent that as a matter of law appellee was entitled to interest if he was entitled to a judgment. The jury having found that appellee was entitled to judgment, the awarding of interest then becomes a matter of simple computation "of six per cent per annum from the date of signing judgment." On motion of appellee, after briefs and argument of counsel, the court found that appellee was entitled to interest on the Illinois judgment until it was reduced to an Arkansas judgment, and interest on the Arkansas judgment from the date of its entry to the date of the trial. We find no error in the trial court's correction of its own error in submitting the question of interest to the jury. After careful consideration of all points urged for reversal, we find no error and the judgment is therefore affirmed.

Counsel for appellee have moved for additional attorneys' fee because of services rendered on this appeal. We are of the opinion that the motion should be granted, and the fee is fixed at $500.00.

It is so ordered.