E. A. QUILTER, Petitioner,

v.

Patrick M. WENDLAND et al., Respondents.

No. A–10727.

Supreme Court of Texas.

May 25, 1966.

Rehearing Denied June 22, 1966.

Fred Parks, Ruby Sondock, Houston, for petitioner.

Hinds & Meyer, Norman W. Black, Holman, Saccomanno, Clegg & Martin, Houston, for respondents.

HAMILTON, Justice.

This is a suit for a declaratory judgment brought by the respondents Patrick M. Wendland, Thomas A. Wendland, and by E. W. Quilter, intervenor, against the petitioner E. A. Quilter, the independent executor of the estate of Mrs. E. J. Lutz. Respondents sought a judgment declaring that they were the owners of certain funds

in savings accounts held by Gibraltar Savings Association. The trial court without a jury entered judgment favorable to the respondents. The Court of Civil Appeals affirmed the judgment of the trial court, holding that the contract between Mrs. Lutz and Gibraltar was complete prior to her death despite the failure of the respondents to sign the application (signature) cards and the failure of Mrs. Lutz to return them to Gibraltar. The Court of Civil Appeals also concluded that the recitations in the passbooks and in the signature cards expressed an intention to vest the absolute right to ownership of the funds in the survivor and that such was the intention of Mrs. Lutz. The Court of Civil Appeals was of the opinion that the respondents were entitled to recover on a third party beneficiary contract theory. 387 S.W. 2d 440. We agree that there was evidence to support a theory of recovery on a third party beneficiary contract.

Petitioner contends that the Court of Civil Appeals was in error in holding that there was evidence of a completed contract between Mrs. Lutz and the Savings Association to establish a joint account with the right of survivorship.

The facts are as follows: On September 15, 1961, Mrs. Lutz called Mr. King, vice-president of Gibraltar Savings Association in charge of opening new savings accounts and the handling of customer relations. She told him that her health was not good and that she could not come down to open three new savings accounts. Although this was unusual, Mr. King agreed to open the accounts and then come out to her home with the passbooks and pick up her check. The transaction that occurred over the telephone was essentially that there were to be three savings accounts of $5,000 each with the name of Patrick M. Wendland on one account, Father Thomas A. Wendland and Sister Michael Wendland on another, and E. W. Quilter on the third account. Mr. King explained that there were two types of accounts that were best suited for her purpose. He told her that with a

trustee account the niece and nephews could not draw out any of the money during her lifetime and need not be told of the accounts. Mr. King explained that with a joint account with the right of survivorship, either of the parties named as an owner of the account could draw the money on presentation of the passbook and that the money would belong to the surviving owner, as was true of the trustee account. Mrs. Lutz chose the joint account with the right of survivorship and Mr. King opened the accounts, giving his own I.O.U. for $15,000. He then took the passbooks and the signature cards to the home of Mrs. Lutz and received from her a check for $15,000. Mr. King testified that he told Mrs. Lutz that it was necessary that the signature cards be signed by her and also by the other named owners and the cards returned to Gibraltar. Mrs. Lutz signed all three cards, but not in his presence. She directed that the dividend checks be sent to her and Mr. King testified that several dividend checks were mailed to her before her death.

Prior to October 5, 1961, when Mrs. Lutz was admitted to the hospital, only one of the signature cards had been signed by someone other than herself. This occurred when Patrick M. Wendland signed the wrong card by mistake. All of the respondents visited Mrs. Lutz in the hospital before her death on December 5, 1961, but the cards were never signed except as mentioned previously. The signature cards were never returned to Gibraltar. After her death, Gibraltar, at the request of E. W. Quilter, canceled the account in the names of himself and Mrs. Lutz and issued a new account in the names of Mr. and Mrs. E. W. Quilter.

Petitioner contends that the agreement between Mrs. Lutz and Gibraltar was not a completed contract and, therefore, the respondents were not entitled to recover on the basis of a third party beneficiary contract theory. Petitioner places much reliance upon the failure of the beneficiaries to sign the signature cards and the failure

of Mrs. Lutz to return these cards to Gibraltar as evidence that the contract was not complete. We disagree.

In Krueger v. Williams, 163 Tex. 545, 359 S.W.2d 48 (1962), W. T. Williams bought a $10,000 investment share account from a savings and loan association. The certificate was issued in his name and that of his daughter, Mrs. Ila Mae Krueger, but was not placed in evidence. Williams signed both his name and hers to the receipt card, which read: "W. T. Williams and/or Ila Mae Krueger or payable to the survivor of either." It was not shown whether Mrs. Krueger knew of the certificate's existence prior to the death of Williams. We held that this recitation in the receipt card created a rebuttable presumption because it did vest in Mrs. Krueger some present interest in the certificate and control over it. In the absence of any evidence to the contrary, we held that Mrs. Williams was entitled to recover as a third party beneficiary of the contract between the savings association and Williams.

In this case, Mrs. Lutz contacted Mr. King of Gibraltar Savings Association and after an explanation by him of the types of accounts available, orally requested him to open three savings accounts of $5,000 each in the names of herself and the other beneficiaries as joint tenants with the right of survivorship. Later that day Mrs. Lutz gave Mr. King her personal check for $15,000 and she accepted three Gibraltar passbooks naming herself and the respondents as joint tenants with the right of survivorship. It was at this time that the contract between Mrs. Lutz and Gibraltar was completed. The record shows that Gibraltar paid Mrs. Lutz dividends on these accounts several times before her death, which confirms the fact that the contract between Mrs. Lutz and Gibraltar had been completed. In addition, Mr. King testified that a person could withdraw funds without the signature card being returned under certain circumstances. The trial court found this to be the case in its findings of fact. Although Mrs. Lutz never returned the signature cards which she signed to Gibraltar, we hold that the contract was completed when she deposited her check with the savings association and accepted the passbooks. In making this holding it is not necessary to rely upon any recitations contained in the signature cards. Rhorbacker v. Citizens Building Association, 138 Ohio St. 273, 34 N.E.2d 751, 135 A.L.R. 988 (1941). See also Barbour v. First Citizens National Bank of Watertown, 77 S.D. 106. 86 N.W.2d 526, 529 (1957).

It was not necessary for the respondents, in order to recover upon such a theory as mentioned above, to sign the signature cards. A person who is not a party to a contract made for his benefit may enforce it. Krueger v. Williams, supra; Knox v. Ball, 144 Tex. 402, 191 S.W. 2d 17, 164 A.L.R. 1453 (1946); 149 A.L.R. 879, 897 (1944).

Petitioner argues that Mrs. Lutz retained control over the passbooks and received the dividends; consequently, there is an absence of a complete divesting of her control so as to make this an enforceable gift. As we said in Krueger v. Williams, supra:

"While we agree that the transaction did not constitute a present gift to Mrs. Krueger of either half or all of the certificate proceeds nevertheless we are concerned with Mrs. Krueger's claim of a survivorship right to the entire proceeds." 359 S.W. at page 50.

We will assume without deciding that there is an incompleted gift here, but even so, the respondents are entitled to recover as third party beneficiaries to the contract that was completed between Mrs. Lutz and the savings association. The evidence that we have set out above supports the conclusion that Mrs. Lutz intended to set up these three joint savings accounts with the right of survivorship and she carried out this intention. Krueger v. Williams, supra; Kelberger v. First

Federal Savings and Loan Association of La Crosse, 270 Wis. 434, 71 N.W.2d 257 (1955); 149 A.L.R. 879, 897 (1944). The retention by Mrs. Lutz of the passbooks under these circumstances is not controlling. See Kelberger v. First Federal Savings and Loan Association of La Crosse, supra, at page 260, and the cases cited therein.

Petitioner relies upon the cases of Olive v. Olive, Tex.Civ.App., 231 S.W.2d 480, no writ history, and Ottjes v. Littlejohn, Tex. Civ.App., 285 S.W.2d 243, error refused, no reversible error. Both of these cases were tried upon the theory of a completed present gift and did not involve the third party beneficiary contract theory with which we are concerned in this case.

■ Finally, petitioner argues that these joint savings accounts with the right of survivorship failed to comply with the requirements of Section 46 of the Probate Code, Vernon's Annotated Texas Statutes, because both parties did not sign the written instrument (signature cards). We held in Krueger v. Williams, supra, at page 51, that the contract between Krueger and the savings association for the benefit of a third party was not controlled by Section 46, supra. That section covers contracts between joint owners of property to establish the right of survivorship.

The judgments of the Court of Civil Appeals and the trial court are affirmed.

SMITH and POPE, JJ., dissenting.

SMITH, Justice (dissenting).

I respectfully dissent. I cannot agree that the evidence supports a theory of recovery on a third party beneficiary contract. The evidence fails to show a completed contract between Mrs. Lutz and the Gibraltar Savings Association. Mrs. Lutz, no doubt, when she called Mr. King over the telephone, had a desire to open three savings accounts of $5,000 each, one in the name of Patrick M. Wendland, one in the name of Father Thomas A. Wendland and

one in the name of E. W. Quilter. No doubt, Mrs. Lutz intended to give these parties $5,000 each at her death. Mr. King testified when asked to tell the Court what she said she wanted, as follows:

"Yes. She said she had some money and she wanted to open three new accounts. She wanted to put her niece and three nephews on these accounts. She wanted $5,000 in each account. She wanted to be able to get the dividends on it just like she did on her others *until her death. At that time she wanted the money in these accounts to go to her niece and nephews.*" [Emphasis added.]

Whether Mrs. Lutz changed her mind or not, the fact remains that she knew from information obtained from Mr. King that her niece and nephews could not get the funds and that the joint account would not be recognized by the Savings Association as long as she kept control of the passbooks and the signature cards. Mrs. Lutz chose to establish a joint account but she did not complete the contract with the Savings Association. She never at any time relinquished control of the funds. Her acts prevented the respondents from withdrawing the funds during her lifetime. The respondents never acquired any title to the funds in the Savings Association during her lifetime, hence, at her death the funds belonged to the Estate of Mrs. Lutz. Mrs. Lutz was informed by Mr. King as to what was necessary to complete the contract with the Savings Association. Mr. King testified that he told Mrs. Lutz that it was necessary that the signature cards be signed by her and also by the other named parties *and the cards returned* to Gibraltar. Mrs. Lutz, one of the parties to the so-called contract, stopped short of completing her plans to leave the money as she first intended. The respondents are no more entitled to the money than if Mrs. Lutz had said she intended to provide in her will that her niece and nephews should receive $5,000 each, and then failed to make such provision. Mr. King testified to additional facts showing that the respondents

are without an enforceable contract and that Mrs. Lutz never relinquished control of the funds. He testified that if the respondents had, prior to Mrs. Lutz's death, come to him asking to withdraw funds from any of the accounts in question without the passbook they would not have paid any of the funds to them; that Gibraltar Savings Association requires that a signature card be signed by a person who attempts to withdraw funds from that Association; that the Association also requires that a holder of an account with the Association have a passbook before they will pay out funds to them; and that when a person identifies himself as a joint tenant but is without a passbook Gibraltar will not pay over funds to that person. This is a policy Gibraltar stands firm on. The fact that the recitations in the passbooks and the signature cards clearly express an intention to vest absolute right to ownership of the funds is no evidence that title vested, since Mrs. Lutz did not complete the contract by delivering the passbooks and signature cards. In view of the fact that Mrs. Lutz was led to believe that the contract would not be complete until the passbooks and signature cards were delivered, this Court should not hold that Mrs. Lutz had completed a contract with the Savings Association.

The Court is extending the Krueger doctrine entirely too far in this case. The result in the Krueger case was reached because of its particular facts. In that case this Court held that the evidence "here does not embrace the terms of such a contract as the one made with the government in Edds v. Mitchell [143 Tex. 307, 184 S.W. 2d 823, 158 A.L.R. 470] nor that made with the savings and loan association in Davis v. East Texas [163 Tex. 361, 354 S.W.2d 926], nor does it lie within the provisions of § 46 of the Probate Code." In speaking of the certificate in Krueger, the Court went on to say "[i]n our opinion the recitation falls short of expressing a clear intention to vest absolute right of the ownership of the funds in the survivor." The

Court continued, saying that "[t]he phrase 'payable to the survivor' is not tantamount to the provision that 'the certificate is held by them as joint tenants with the right of survivorship'." There can be no doubt that the Court was of the belief that the evidence discussed up to that point in the opinion did not of itself show a completed contract. However, in Krueger, there was the additional fact that a receipt card was delivered to the savings association, whereas in the present case the passbooks and signature cards were not delivered. In Krueger, this Court gave great weight to the language appearing on the receipt card. The Court said:

> "However, the language appearing on this receipt card *does serve to vest in Mrs. Krueger some* present interest in and control over the certificate as well as the contractual right to possession of the proceeds as survivor." [Emphasis added.]

I can understand the holding in Krueger because the "receipt card" upon which the Court relied was actually delivered to the savings association. Therefore, it was not illogical to conclude that all of the evidence, including the "receipt card," proved a completed contract. As I read the Krueger opinion, if the "receipt card" had not been delivered, this Court would have reached a different result. In the present case, the signature cards were not delivered to the Savings Association, nor were the passbooks delivered to the niece and nephews. In Krueger, without the delivery of the "receipt card," this Court would not have held that a presumption had been created that there was an intention on the part of the purchaser of the certificate to vest in Mrs. Krueger a present interest in and control over the certificate.

I would reverse the judgments of the courts below and render judgment for the petitioner.

CALVERT, C. J., and POPE, J., join in this dissent.