**DAIRYLAND COUNTY MUTUAL INSURANCE COMPANY OF TEXAS, Petitioner,**

v.

**Harry CHILDRESS, et al., Respondents.**

No. C-1554.

Supreme Court of Texas.

May 25, 1983.

Vial, Hamilton, Koch, Tubb, Knox &
Stradley, Jeffrey S. Lynch and Gerald R.
Powell, Dallas, for petitioner.

Thompson, Coe, Cousins & Irons, Craig Eggleston, Dallas, for respondents.

WALLACE, Justice.

This is a dispute as to liability insurance coverage provided by a family automobile insurance policy containing a non-owner's endorsement. Harry Childress and the passengers in his automobile at the time of the collision along with the owner of a private residence damaged as a result of the collision (Childress) sued Frederick Booth (Booth), the insured, for damages arising out of the collision. While this suit was pending, Dairyland County Mutual Insurance Company of Texas (Dairyland), the insuror, sued Booth seeking a declaratory judgment that the non-owner's policy did not cover an automobile furnished to the insured for his regular use. An agreed judgment was rendered declaring that no coverage was provided. Childress were not made a party to the declaratory judgment action. After securing a judgment against Booth, Childress sued Dairyland for the amount of the judgment, for attorney's fees and for recovery under the Deceptive Trade Practices Act.[1] Dairyland filed a cross action for attorney's fees alleging the DTPA suit was not filed in good faith. The trial court rendered judgment that both parties take nothing. The court of appeals affirmed the take nothing judgment against Dairyland but reversed and rendered judgment for Childress for the policy limits of $11,000 personal injury and $5,000 property damage, for attorney's fees in the amount of $6,400 and for interest on the judgment against Booth. 636 S.W.2d 282. We affirm the judgment of the court of appeals.

The issues presented are: (1) whether a non-owner's policy provides coverage for an automobile not owned by the named insured but furnished for his regular use; (2) whether the Childress plaintiffs were bound by a declaratory judgment action between the insuror and the insured, to which the plaintiffs were not made parties; (3) what evidence is necessary to sustain attorney's fees for a defendant alleging a bad faith suit under the DTPA; and (4) whether a judgment creditor of an insured covered by an automobile liability insurance policy is entitled to attorney's fees under Art. 2226[2] in a suit against the insured based on the judgment.

## COVERAGE UNDER NON-OWNER'S ENDORSEMENT

Booth was the named insured under two separate automobile liability insurance policies issued by Dairyland. Policy No. 41–0349565 was an owner's policy written on a 1971 Dodge automobile. Policy No. 41–0350933 was a non-owner's policy. These policies consist of the following:

(1) each contains the same basic policy outlining the type of coverage provided and the rights and duties of the insured and the insuror;

(2) each contains a policy declaration sheet setting out the vehicle covered by the basic policy. The owners policy enumerated a 1971 Dodge as insured and the non-owners policy listed "non-owners" in the place for description of the insured vehicle; and

(3) the non-owners policy also contains a non-owners endorsement explaining what vehicles are covered under the policy.

There is no contention before us that the owner's policy provided coverage for the accident in this case.

At the time of the collision Booth was driving a Chevrolet automobile owned by Para Gowens. The jury found in response to a special issue that the Chevrolet was furnished to Booth for his regular use. Dairyland contends that the finding precludes coverage. The basis for that contention is a definition of "non-owned automobile" contained in the basic policy.

---

1. Tex.Bus. & Com.Code Ann. § 17.50(c).

2. Tex.Rev.Civ.Stat.Ann.

"Non-owned automobile" means an automobile . . . not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile.

However, the non-owner's endorsement attached to the policy in question states that it becomes a part of the policy to which it is attached, that the insurance afforded by the policy for bodily injury liability and property damage liability applies with respect to the use of *any* automobile by or in behalf of the named insured subject to the following provisions:

2. The insurance does not apply

(a) to any automobile owned by the named insured.

The other listed exclusions are not pertinent to this case. We interpret the endorsement according to its plain language. That interpretation compels us to hold that the policy provided bodily injury liability and property damage liability coverage for Booth while he was driving the Chevrolet automobile which was furnished for his regular use. We find that this definition comports with the purpose of the non-owner's endorsement as is explained in *Fire, Casualty and Surety Bulletin,* Personal Auto En–1, (January, 1982), an insurance industry publication:

> The most usual need for the Extended Nonowned [sic] endorsement, perhaps, is to delete the exclusions of nonowned [sic] auto 'furnished or available for the regular use' of the named insured or any family member. If, for an obvious example, the named insured is allowed to drive a work car home on a regular basis and use it for personal use, a regular Personal Auto policy does not provide coverage as to that car—while it is being used by anyone. Likewise, a car *furnished to a family member* of the named insured is not covered, except with respect to the *named insured's* use of the car. The Extended Nonowned [sic] endorsement deletes both exclusions as they would otherwise apply to the individual named in the endorsement. (Emphasis added).

## EFFECT OF THE DECLARATORY JUDGMENT

Childress filed suit against Booth on May 17, 1976. Dairyland hired attorney Mark T. Davenport to defend Booth and paid him for his services. Davenport filed an answer for Booth on June 4, 1976. On June 15, 1976, Dairyland filed suit for declaratory judgment that the non-owner's policy did not provide Booth coverage for the collision with Childress. On January 17, 1977, an agreed judgment was rendered that Dairyland had no duty to defend Booth and that the non-owner's policy provided no coverage for Booth respecting the collision with Childress. On July 18, 1978, judgment was rendered for Childress in this suit against Booth.

Dairyland relies upon the doctrines of res judicata and collateral estoppel to support its contention that Childress is bound by the declaratory judgment. Their argument is that Childress' suit is derivative of Booth's coverage and therefore they are in privity with Booth, citing *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361 (Tex.1971); *Kirby Lumber Co. v. Southern Lumber Co.,* 145 Tex. 151, 196 S.W.2d 387, 388 (1946); *Cain v. Balcom,* 130 Tex. 497, 109 S.W.2d 1044 (1937); and *Davis v. Dairyland County Mutual Insurance Co. of Texas,* 582 S.W.2d 591 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r. e.). Our examination of the cases cited by Dairyland reveals that they are all distinguishable from the instant case on their facts. *Kirby Lumber* and *Cain v. Balcom* involved real estate title disputes. Both cases held that a grantee of a deed to real property is in privity with his grantor. In *Davis v. Dairyland,* the plaintiffs were attempting, *as assignees* of the insured to recover from the insuror. The court of civil appeals carefully limited its decision to the facts involving an assignee of the insured. *Id.* at 593.

In *Benson v. Wanda Petroleum Co.,* the Bensons were passengers in an automobile involved in a collision with a truck owned by Wanda Petroleum. The driver and the

Bensons sued Wanda but the Bensons took a nonsuit before trial. At trial, Wanda was exonerated of all negligence. The Bensons then refiled their suit against Wanda who contended that the suit was barred by res judicata or collateral estoppel. This Court rejected Wanda's contentions. We then stated the rule that there is no general definition of privity and that the determination of who are privies requires a careful examination into the circumstances of each case.

> The word 'privy' includes those who control an action although not parties to it ... those whose interests are represented by a party to the action ... successors in interest.

*Id.* at 363.

In the present action, Childress could exercise no control over the declaratory judgment suit. Their interests were not represented by a party to the action nor were they successors in interest to a party. In fact the purpose of the suit was to work against their interest.

The Uniform Declaratory Judgment Act was adopted by Texas in the enactment of Art. 2524–1, Tex.Rev.Civ.Stat.Ann. Section 11 of that statute states in pertinent part:

> When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.

No Texas appellate courts have considered the application of that statute to a fact situation such as the one before us.

■ Those states which have addressed the precise question before us have unanimously held that a party in Childress' position is not barred by res judicata or collateral estoppel from pursuing a suit against the insuror to recover under the terms of the policy. *Southern Farm Bureau Casualty Insurance Co. v. Robinson,* 236 Ark. 268, 365 S.W.2d 454, 457 (1963); *Shapiro v. Republic Indemnity Co.,* 52 Cal.2d 437, 341

P.2d 289, 291 (1959); *Pharr v. Canal Insurance Co.,* 233 S.C. 266, 104 S.E.2d 394 (1958). Also see Appleman, *Insurance Law and Practice,* § 11371 (1981). We hold that Childress and Booth were not in privity respecting the declaratory judgment suit and the doctrine of res judicata and collateral estoppel is not applicable to Childress' suit against Dairyland.

### DEFENDANT'S ATTORNEY'S FEES IN DTPA CASE

■ Childress' original petition included an allegation of a deceptive trade practice by Dairyland. That claim was deleted in an amended petition filed February 12, 1980, and the case went to trial on November 10, 1980. Dairyland asserts that the filing of the claim without an allegation that Childress purchased goods or services from Dairyland constituted bad faith as a matter of law. Childress argues that the claim was filed in good faith as third party beneficiaries of the insurance contract. This Court in *Hi-Line Electric v. Travelers Insurance Companies,* 593 S.W.2d 953 (Tex. 1980), first determined that a third party beneficiary was not a consumer as defined by the DTPA. Shortly after our opinion in *Hi-Line Electric,* Childress amended the petition to delete the DTPA claim. This occurred approximately nine months before the trial of the case. These facts do not prove bad faith as a matter of law. No evidence was presented on the issue of the bad faith in filing of the DTPA claim and no issues were requested by Dairyland. Therefore, Dairyland waived its claim by failing to produce evidence or request a jury finding on the issue. Tex.R.Civ.P. 279. A complaining party under Tex.Bus.Com. Code § 17.50(c) is required to offer evidence and secure a favorable fact finding on the issue of bad faith. *Computer Business Services Inc. v. West,* 627 S.W.2d 759 (Tex. Civ.App.—Tyler 1981, writ ref'd n.r.e.). Dairyland is not entitled to attorney's fees.

### ATTORNEY'S FEES UNDER ART. 2226

■ As a basis for awarding attorney's fees to Childress, the court of appeals held

that this suit was founded on an oral or written contract and that Childress, as the prevailing parties, were entitled to attorney's fees in the amount stipulated by the parties. Art. 2226 does not apply to contracts of certain insurors who are identified in those sections of the Insurance Code enumerated in Art. 2226. Dairyland is a county mutual insurance company and as such is not one of the insurors exempt from the provision of Art. 2226. *See* Tex.Ins.Code Ann. art. 17.22. Therefore, it is not exempt from a claim for attorney's fees pursuant to Art. 2226.

Dairyland further contends that Childress' suit is one to enforce a judgment and therefore is not founded on an oral or written contract. It is true that Childress were required to obtain a judgment against Booth prior to bringing an action against Dairyland. This is necessary because the insurance contract provides that Dairyland would pay only such sums as the insured was legally obligated to pay; therefore, it was necessary for Childress to secure a judgment to show that the insuror was legally obligated to pay under its contract. The very basis of this suit was the obligation of Dairyland to pay Childress' damages as agreed by Dairyland in its insurance contract with Booth.

■ Under the laws of Texas, a third person not a party to a contract will still have a cause of action to enforce the contract if the contract was made for that person's benefit. *Quilter v. Wendland,* 403 S.W.2d 335, 337 (Tex.1966); *Knox v. Ball,* 144 Tex. 402, 191 S.W.2d 17, 21 (1946). It would follow logically that only a third party beneficiary who could enforce a contract to which she is not a party would also be able to sue for attorney's fees under the contract provision of Art. 2226 so long as such a claim was not excluded by the named statutory exemptions. Thus the key to determining Childress' eligibility for an attorney's fee award here requires an analysis of their possible standing as third party beneficiaries to the Booth-Dairyland automobile liability insurance contract.

There is no claim that either Dairyland or Booth contemplated that Childress would become claimants of the insurance policy in question. This fact might be determinative of the question but for the statutory scheme that made it incumbent upon Booth, as a driver, to have liability insurance in the first place. There is no question in our minds that the compulsory insurance requirement of the Texas motor vehicle safety laws implies that all potential claimants for damages resulting from automobile accidents are intended as beneficiaries of the statutorily required automobile liability coverage. *See* the Texas Motor Vehicle Safety-Responsibility Act, Tex.Rev.Civ. Stat.Ann. art. 6701h, §§ 1(10), 1A, 2(b), 5 and 32(f) (setting out the definitions and mandatory minimum liability requirements for automobile insurance as well as the fines and penal sanctions for failure to have general automobile liability coverage.)

■ Art. 6701h states that all drivers must be able to show proof of sufficient "financial responsibility" to satisfy the minimum liability coverage specified by § 5 of the act. "Proof of financial responsibility" is defined by the statute as "[p]roof of ability to respond to damages for liability on account of [automobile] accidents . . . ." Art. 6701h, § 1(10). It is a matter of simple logic to infer that the statutory obligation holding an insured liable for damages in automobile accidents also makes claimants for such damages the intended beneficiaries of an insurance policy purchased to satisfy the statutory requirement. Art. 6701h in effect creates a class of legal beneficiaries whose members are implied into all automobile insurance contracts as intended beneficiaries by operation of law. For discussion of the incorporation of statutory mandates into contracts by operation of law, see *Kierstead v. City of San Antonio,* 643 S.W.2d 118, 121 (Tex.1982); *Langever v. Miller,* 124 Tex. 80, 76 S.W.2d 1025, 1026–1027 (1934). There is no question that Childress, as claimants for damages, are the legally intended beneficiaries of the Booth-

Dairyland insurance contract. As such, they are entitled to bring an action on this contract for damages. *Quilter,* supra; *Knox,* supra. *See also* Appleman, *Insurance Law and Practice,* § 1091 (1981); Restatement (Second) of Contracts, § 302(1)(b) (1979). We thus conclude that the Childress' standing to enforce the Booth-Dairyland contract for redress of their damages also entitles them to seek attorney's fees under the Art. 2226 provision of fees for actions founded on contracts. *Ibid.* We hold that this action was based.upon a written contract and therefore Childress, as the prevailing parties, were entitled to recover attorney's fees.

The judgment of the court of appeals is affirmed.

Dissenting opinion by ROBERTSON, J., in which BARROW and CAMPBELL, JJ., join.

ROBERTSON, Justice, dissenting.

I respectfully dissent from that portion of the majority opinion which awards Childress attorneys' fees under Art. 2226.

I cannot agree with the majority reasoning that a contractual relationship existed between Dairyland and Childress because Art. 6701h intended to make all potential accident claimants third-party beneficiaries to all automobile liability insurance policies. Nor does the authority relied on in the opinion support this conclusion, as those cases involve contracts which were expressly made for the benefit of the party seeking to recover fees.

Statutes authorizing awards of attorneys' fees are penal in nature and therefore must be strictly construed; consequently, these fees are not recoverable unless such right is provided for by statute or by a contract between the parties. *Knebel v. Capital Nat'l Bank in Austin,* 518 S.W.2d 795 (Tex. 1974); *Equitable Trust Co. v. Lyle,* 627 S.W.2d 824 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.); *Jay Fikes and Associates v. Walton,* 578 S.W.2d 885 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.).

Here, Childress is simply a judgment creditor of Dairyland, and as such does not come under the purview of Art. 2226. While it may be true that the underlying suit was "founded" on a contract, that contract was strictly between Booth and Dairyland; Childress had no cause of action against Dairyland absent a judgment against Booth.

I would reverse that part of the judgment of the court of appeals awarding attorneys' fees and affirm the remainder of the judgment.

BARROW and CAMPBELL, JJ., join in this dissenting opinion.