### E. A. QUILTER, Appellant,

v.

### Patrick M. WENDLAND et al., Appellees.

No. 14487.

Court of Civil Appeals of Texas.

Houston.

Feb. 11, 1965.

Rehearing Denied March 4, 1965.

Parks & Fullenweider, Donn C. Fullenweider, Houston, for appellant.

Hinds & Meyer, John K. Meyer, Houston, for appellees Patrick M. Wendland and Rev. Thomas A. Wendland.

Holman, Saccomanno, Clegg & Martin, Norman W. Black, Houston, for appellee E. W. Quilter.

COLEMAN, Justice.

This is a suit by Patrick M. Wendland, Thomas A. Wendland, plaintiffs, and by E. W. Quilter, Intervenor, for declaratory judgment that they are the owners of certain funds in savings accounts held by Gibraltar Savings Association by right of survivorship, the accounts having been established by Mrs. E. J. Lutz, deceased, with her money as accounts in joint tenancy with right of survivorship. E. A. Quilter, the independent executor of the estate of Mrs. E. J. Lutz, was named defendant. After a trial to the court without a jury judgment was entered favorable to plaintiffs and intervenor and the defendant appealed.

Mr. E. D. King, Vice-President of the Gibraltar Savings Association, testified that he was in charge of the savings department of the Association with the responsibility of opening new savings accounts and handling customer relations on problems dealing with savings accounts. On September 15, 1961, Mrs. Lutz called Mr. King and told him that her health was not good and that she wanted to open three new savings accounts of $5,000.00 each on that day and wondered if he could open the accounts and bring the books out to her home and pick up her check.

Mr. King told her that while it was quite unusual for a pass book to be delivered before the money was received, he would be glad to do this for her and proceeded to secure the necessary information over the telephone. She told him that she wanted the name Patrick M. Wendland on one account, Father Thomas A. Wendland and Sister Michael Wendland on another, and E. W. Quilter on the third, so that this money could be divided among them. Mr. King explained that the Association had two types of accounts that might suit her purpose, either a joint account with right of survivorship, or a trustee account. He told her that in the case of a trustee account the niece and nephews could not draw out any

of the money during her lifetime and need not be told of the accounts, but that by establishing the joint account either of the parties named as an owner of the account could draw the money on presentation of the account book, and that the money would belong to the surviving owner in either instance. Mrs. Lutz then directed Mr. King to open the joint accounts with right of survivorship. Mr. King then wrote the accounts as directed and had each account posted on the Association's books, gave his own I. O. U. for $15,000.00, and took the pass books and signature cards to the home of Mrs. Lutz. There he was given a check for $15,000.00 and delivered the pass books and signature cards to Mrs. Lutz. He told her that it was necessary that the signature cards be signed by her and the other named owners and returned to him. Mrs. Lutz told him that her niece and nephews came by to see her from time to time and that the next time they were in she would have them sign. She directed that dividend checks be sent to her. The pass books were identical except for the names. Certificate No. 94701 is headed Savings Share Account "as joint tenants with right of survivorship and not as tenants in common."

The signature cards delivered to Mrs. Lutz were signed by her. Only one of the appellees, Patrick M. Wendland, visited Mrs. Lutz prior to October 5, 1961, when she was admitted to the hospital where she remained until her death on December 5, 1961. All of the appellees visited her in the hospital. When Patrick M. Wendland visited Mrs. Lutz she told him of the accounts and requested him to sign the signature card. By mistake he signed the wrong card. The condition of Mrs. Lutz at the time of the visits of the other appellees is not shown by the evidence, but the signature cards were not presented to them and have not been signed by them. After the death of Mrs. Lutz the Association, at the request of Mr. Quilter, cancelled Account No. 94699 in the names of Mrs. Lutz and Mr. Quilter, and issued a new account

No. 96631 in the name of Mr. and Mrs. E. W. Quilter. The signature cards were identical except for the names and read as follows:

"Acct. No. _____ SIGNATURE CARD AND APPLICATION  Date _____ 19___

As Joint Tenants with Right of Survivorship

(One signature required for withdrawal)

(1) _____
(Last Name)

Mr.
Mrs. _____
Miss    (Other names or initials used in
signature)

(2) _____
(Last Name)

Mr.
Mrs. _____
Miss    (Other names or initials used in
signature)

(3) _____
(Last Name)

Mr.
Mrs. _____
Miss    (Other names or initials used in
signature)

As Joint Tenants with right of survivorship and not as tenants in common the undersigned hereby apply for a savings account and membership in the

GIBRALTER SAVINGS ASSOCIATION, Houston, Texas

and herewith attach $_____, to be credited thereon,

and for the issuance of a certificate evidencing such account and membership in their joint names as joint tenants with right of survivorship and not as tenants in common, as above specified. Specimens of the signatures of such joint tenants are shown below. Any one or more of the Joint Tenants is authorized to act in all matters relating to this account, including, but not limited to, the withdrawal of funds from this account and the pledging of this account, in whole or in part, as security for any loan made by the Association to one or more of the Joint Tenants. Such withdrawal or pledge shall not operate to sever or terminate the joint tenancy relationship between the Joint Tenants. It is agreed by the undersigned parties with each other, and by the parties with said Association, that any funds placed in or added to the account by any one of the undersigned joint tenants is, and shall be, conclusively intended to be a gift, at that time, of such funds to the other joint tenant or joint tenants, to the extent of his or their pro rata interest in the account. Any one of the undersigned joint tenants is authorized to withdraw funds from this account.

At all meetings at which one of the undersigned is not present the Official Proxy Committee of the Association is hereby appointed our attorney-in-fact and proxy, and we hereby authorize said Committee to cast all votes to which we are entitled by reason of membership in the Association. It is understood that said Official Proxy Committee may be changed from time to time by the Board of Directors and that a majority of said Committee, as constituted at the time of any meeting of shareholders, shall be authorized to cast the vote or votes of the undersigned.

_____     _____     _____
(Signature)               (Street Address)          (City and State)

_____     _____     _____
(Signature)               (Street Address)          (City and State)

_____     _____     _____
(Signature)               (Street Address)          (City and State)"

In Krueger v. Williams, 163 Tex. 545, 359 S.W.2d 48, an investment share account was purchased by W. T. Williams in the principal sum of $10,000.00 from a savings and loan association. The certificate was issued in the name of W. T. Williams and/or Mrs. Ila Mae Krueger. The certificate was not introduced into evidence, but the receipt card recited: "W. T. Williams and/or Ila Mae Krueger or payable to the survivor of either." The card was signed by Mr. Williams, who also signed Mrs. Krueger's name. The evidence did not reveal whether or not Mrs. Krueger knew of the existence of the certificate prior to her father's death. The court cited Chandler v. Kountze, Tex.Civ.App., 130 S.W.2d 327, error ref., Edds v. Mitchell, 143 Tex. 307, 184 S.W.2d 823, 158 A.L.R. 470, and Davis v. East Texas Savings & Loan Association, 163 Tex. 361, 354 S.W.2d 926, for the proposition that a contract made by a decedent with a savings and loan association by which an account was established making decedent and a third person joint tenants with the right of survivorship is enforceable by the third person for whose benefit the contract was made whether he is a creditor or a donee.

The court then held that the recitation in the receipt card fell short of expressing a clear intention to vest the absolute right of the ownership of the funds in the survivor, but that it did vest in her *some* present interest in and control over the certificate as well as the contractual right to possession of the proceeds as survivor, creating a rebuttable presumption of such intention.

In this case the recitations in the pass books and in the signature cards clearly express an intention to vest the absolute right to ownership of the funds in the survivor. The trial court found that such was her intention and this finding is clearly supported by the evidence.

It is clear that there was an agreement between Mrs. Lutz and the Association to establish a joint account with right of survivorship which was executed by acceptance of Mrs. Lutz's money by the Association, the issuance of the pass books, the payment by the Association of dividends on the accounts, and the payment of the money in one of the accounts to Mr. Quilter as survivor. The contract between Mrs. Lutz and the Association was complete prior to her death despite the failure of the donees to sign the application card and the failure of Mrs. Lutz to return them to the Association. Krueger v. Williams, supra.

The judgment of the trial court is affirmed.