Roger S. BASKES, Plaintiff,

v.

**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION,**
Defendant.

No. 85 C 9608.

United States District Court,
N.D. Illinois E.D.

Dec. 16, 1986.

William Biederman, Marjorie E. Schaff-
ner, Katz, Randall & Weinberg, Chicago,
Ill., for plaintiff.

Anton R. Valukas, U.S. Atty. by Mary S.
Rigdon, Asst. U.S. Atty., Chicago, Ill.,
Charlotte A. Reid, Don W. Joe, Office of
Gen. Counsel, Washington, D.C., for de-
fendant.

### ORDER

BUA, District Judge.

The matter before this court concerns
defendant's motions to dismiss and for
summary judgment on Counts I and II of
plaintiff's complaint. For the reasons stat-
ed herein, defendant's motions are granted.

This case arises out of a dispute between
the plaintiff, Roger Baskes ("Baskes"), and
the defendant, Federal Savings and Loan
Insurance Corporation ("FSLIC"), concern-
ing insurance claims on two $100,000 certif-
icates of deposit issued by and deposited
with Empire Savings and Loan Association
of Mesquite, Texas ("Empire"). As the
issues raised by the parties focus on the
validity and application of certain FSLIC
recordkeeping rules, this court will briefly
review relevant statutory and regulatory
provisions impacting on the parties' claims
before turning to a discussion of the facts
in this case.

### I. BACKGROUND

In 1932, Congress created the Federal
Home Loan Bank System to assist in the
financing of the purchase and construction
of homes. The system is administered by
the Federal Home Loan Bank Board
("Board") which exercises administrative
powers over thrift and mortgage institu-
tions. Through the enactment of the Home
Owners' Loan Act ("HOLA") and the Na-
tional Housing Act ("NHA"), Congress
vested the Board with authority to regulate
and supervise federally insured savings
and loan associations to ensure the sound-
ness of their operations for the protection
of depositors, creditors and general public.
HOLA, 12 U.S.C. § 1464 *et seq.;* NHA, 12
U.S.C. § 1724 *et seq.* The Board also op-
erates and directs the FSLIC, which in-
sures the accounts of eligible institutions.
12 U.S.C. §§ 1437, 1725(a), (c) and
1730(k)(1).

Pursuant to HOLA and NHA, the Board
maintains broad discretion and exclusive
authority to appoint, ex parte and without
notice, a conservator or receiver to take
over the affairs of a federally insured sav-
ings and loan if, in the opinion of the
Board, the association (1) is insolvent, or (2)
has substantially dissipated its assets and
earnings due to illegal or unsound practic-
es, or (3) is in an unsafe or unsound condi-
tion to transact business. *See* 12 U.S.C.
§ 1464(d)(6)(A); 12 U.S.C. § 1729. If an
insured savings and loan is believed insol-

vent, the Board is authorized to appoint the FSLIC as receiver. 12 U.S.C. § 1464(d)(6)(A); 12 U.S.C. §§ 1724(b), (c). Acting in the appointed capacity of receiver, the FSLIC has broad authority to operate such an association, merge it with another association, proceed to liquidate its assets, or make such other disposition of the matter as it deems appropriate. 12 U.S.C. § 1729(b).

In the event of a default by an insured institution, the FSLIC in its corporate capacity is required to make payment on each insured account pursuant to 12 U.S.C. § 1728(b). In § 1728(a), Congress authorizes the FSLIC to develop and adopt regulations to define terms and to create classifications and exceptions for determining the extent of insurance coverage provided under § 1724(b).

Section 1724(b) states in relevant part:

> funds held in a fiduciary capacity, when invested in an insured institution, shall be insured in an amount not to exceed $100,000 for each trust estate, and notwithstanding any other provisions of this chapter, such insurance shall be separate from and additional to that covering other investments by the owners of such trust funds or the beneficiaries of such estates.

Pursuant to this congressional directive, the Board, as operating head of the FSLIC, adopted recordkeeping rules for determining whether deposited funds are insurable under principles applying to trust accounts. These recordkeeping rules are set forth in 12 C.F.R. § 564.2(b) and state:

> (1) The account records of the insured institution shall be conclusive as to the existence of any relationship pursuant to which the funds in the account are invested and on which a claim for insurance coverage is founded. Examples would be trustee, agent, custodian or executor. No claim for insurance based on such a relationship will be recognized in the absence of its disclosure on such records.

> (2) If the account records of an insured institution disclose the existence of a relationship which may provide a basis for additional insurance, the details of the relationship and the interests of other parties in the account must be ascertainable either from the records of the association or the records of the account holder maintained in good faith and in the regular course of business.

> (3) The account records of an insured institution in connection with a trust account shall disclose the name of both the settlor (grantor) and the trustee of the trust and shall contain an account signature card executed by the trustee.[1]

The purpose of these regulations is to prevent post-default creation of separate trust accounts which would fraudulently increase insurance coverage and to provide the FSLIC with quick access to information necessary to settle insurance claims in an expedient fashion. *See* 50 Fed.Reg. 19, 188 (1985). The signature card requirement set forth in subsection (3) was added by the Board due to the fact that separate insurance coverage afforded trusts was more likely to be abused than insurance afforded other account relationships. *Id.*

Applying the foregoing regulations to insurance claims on funds allegedly held in a fiduciary capacity, the FSLIC maintains the policy that each of the recordkeeping requirements must be shown to exist before a trust account will be recognized for purposes of insurance coverage. *Id.* In the case where the institutions' records do not contain the information and/or documents required under 12 C.F.R. § 564.2(b), the FSLIC allows the claiming party to show by clear and convincing evidence that the recordkeeping requirements were in fact met.

## II. FACTS

In December of 1983, $100,000 was wired to Empire from another banking institution to be placed in an account for the benefit of

---

**1.** This subsection was deleted on April 4, 1986 but such action does not apply retroactively. 51 Fed.Reg. 12122 (1986) (to be codified at 12 C.F.R. § 564.2).

the LJ, SZ and JB trusts. Although Baskes, the trustee, was required under FSLIC regulations to execute a signature card and disclose the identity of the trustee, settlor, and beneficiaries, Baskes failed to do so. However, Bernard Zell, the settlor of the trust, did complete a signature form indicating his signature to be the authorizing signature on the account. Empire designated the LJ, SZ and JB trusts as the accountholders of certificate of deposit 491017151 (hereinafter referred to as "LJ trusts account").

In January of 1984, $100,000 was wired to Empire to be placed in an account for the benefit of the RZ trust. Empire designated the RZ trust as the accountholder of certificate of deposit number 491003847 (hereinafter referred to as "RZ trust account"). Although Empire's records do not contain a signature card for this account, the trustee, Baskes, claims to have executed such a form at the time the account was opened. Both certificates of deposit issued for the trust accounts were in nonnegotiable form.

On March 14, 1984 the Board determined that grounds existed for appointment of a receiver for Empire. The FSLIC was appointed receiver for the purpose of liquidating Empire pursuant to 12 U.S.C. § 1729(c)(1)(B), and directed in its corporate capacity to issue payments on each insured account at Empire pursuant to 12 U.S.C. § 1728(b). In carrying out this direction, the FSLIC notified the accountholders of their rights concerning payment of insurance on their accounts. Responding to the FSLIC's notification, Baskes, as trustee, filed two insurance claims for $100,000 each on the LJ trusts account and the RZ trust account.

Considering Baskes' insurance claims in light of governing insurance regulations, the FSLIC took the position that Baskes was entitled to only $50,000 of coverage on each of the two accounts. The FSLIC determined Baskes failed to sufficiently prove he executed signature cards for the trust accounts as required by 12 C.F.R. § 564.2(b)(3). As a consequence, the FSLIC refused to insure the accounts as separate trust accounts. Instead, the FSLIC treated the accounts as the individual accounts of Baskes and apportioned the maximum insurance of $100,000 between the two accounts, *i.e.*, $50,000 each. Aside from the insurance proceeds, Baskes was issued two certificates of claims in liquidation representing the uninsured balance of each account ($50,000 plus accrued interest as of the date of default).

On July 29, 1985, the Director of the FSLIC ruled on Baskes' request for reconsideration and affirmed the agency's initial determination. Believing he had exhausted all prerequisites to judicial review under the Administrative Procedures Act (APA), 5 U.S.C. § 701 *et seq.*, Baskes filed a two-count complaint seeking damages against the FSLIC on the ground the insurance determination was incorrect. Count I seeks judicial review of the insurance determination by the FSLIC pursuant to the APA. Count II asserts a negligence claim against the receivership estate seeking the uninsured amount of the accounts. Baskes contends this court is vested with subject matter jurisdiction to hear his negligence claims under the NHA, 12 U.S.C. § 1725(c)(4); APA, 5 U.S.C. § 701; and Declaratory Judgment Act, 28 U.S.C. § 2201.

### III. DISCUSSION

#### A. Count I

The standard of review for analyzing the final determination of the FSLIC is established by the APA. 5 U.S.C. § 706. When reviewing administrative decisions, courts are authorized to set aside agency decisions only when they are: (1) unconstitutional, (2) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law, (3) not authorized by statute, (4) violative of established procedure, or (5) unsupported by substantial evidence. In the present case, Baskes asserts the decision of the FSLIC refusing trust account coverage on the two insurance claims as trustee was arbitrary and capricious.

■ The scope of review under the arbitrary and capricious standard is narrow, and a court is forbidden from substituting its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). The standard accords considerable deference to the agency and requires affirmance if a rational basis exists for the administrative determination. *Ethyl Corp. v. EPA*, 541 F.2d 1, 34 (D.C.Cir.) (en banc), *cert. denied* 426 U.S. 941, 96 S.Ct. 2662, 2663, 49 L.Ed.2d 394 (1976). Under this standard, plaintiff bears the burden of proof and persuasion that the agency's determination is arbitrary and capricious. *Mississippi Hosp. Ass'n., Inc. v. Heckler*, 701 F.2d 511, 516 (5th Cir.1983). This burden increases when the question concerns an agency's interpretation of its own regulations. Unless the agency's interpretation is clearly erroneous, courts are required to give it considerable deference. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 568, 100 S.Ct. 790, 798, 63 L.Ed.2d 22 (1980). Finally, a court reviewing an administrative decision is not permitted to hold a *de novo* hearing, but must restrict its inquiry to evidence contained in the administrative record. *Atlantic Refining Co. v. FTC*, 381 U.S. 357, 367, 85 S.Ct. 1498, 1505, 14 L.Ed.2d 443 (1965).

■ Baskes first opposes the FSLIC's motion for summary judgment on the ground that issues of material fact exist. Specifically, Baskes asserts the issues of whether he executed a signature card for the RZ trust account and whether Empire subsequently lost the RZ trust account signature card remain unresolved. However, the factual issues asserted by Baskes were raised before the FSLIC and dismissed due to Baskes failure to present sufficient evidence to prove such events occurred. In fact, Baskes was given 30 days after the FSLIC's final determination to provide further evidence showing he complied with the recordkeeping requirements of 12 C.F.R. § 564.2(b), but that Empire subsequently lost the account records. Admin. Record at 8. Baskes declined to offer any additional evidence. As this court is not permitted to conduct a trial *de novo*, this court is unable to see how Baskes' factual disagreements with the FSLIC's determination prevents entry of summary judgment.

As stated earlier, this court's role in reviewing the FSLIC's decision is to determine from the evidence contained in the administrative record whether the agency's determination was arbitrary and capricious. The only evidence that Baskes presented to the FSLIC to support his claim of compliance with 12 C.F.R. 564.2(b) was that he believed in good faith that he personally executed a signature card for the RZ trust account. The FSLIC determined that in the absence of any supportive documentary evidence, Baskes failed to carry his burden of showing actual compliance with 12 C.F.R. 564.2(b)(3). Although Baskes argues that the FSLIC had the burden of showing no signature cards were executed by him, Baskes fails to recognize that the insurance regulations presume the bank's records to be conclusive unless the accountholder is able to present contrary evidence in the form of records maintained in good faith and in the regular course of business. 12 C.F.R. § 564.2(b). Given the lack of supportive evidence presented by Baskes to support his assertion of compliance, this court is unable to find the FSLIC's ruling arbitrary and capricious.[2]

■ Turning to Baskes' second argument, Baskes contends 12 C.F.R. § 564.2(b) contradicts the explicit insurance coverage provided in the NHA for trust estates. According to Baskes, § 1724(b) of the NHA mandates that the FSLIC shall insure each fiduciary account up to $100,000. Because the NHA does not expressly contain an

---

2. Baskes also disputes the FSLIC's determination that the signature card executed for the LJ trust account by the settlor, Norman Zell, failed to meet the recordkeeping requirements. A reading of 12 C.F.R. 564.2(b)(3) makes clear, however, that the trustee, not the settlor must execute the signature card for a trust account. As this requirement was obviously not met, the FSLIC's determination was not arbitrary and capricious.

exception precluding such insurance when certain information is not disclosed on the account records of the savings institution, Baskes argues the recordkeeping requirements of 12 C.F.R. § 564.2(b) are contrary to the statute. Alternatively, Baskes asserts that the substance of beneficial ownership and not the form of records should govern the FSLIC's insurance determinations.

Both of Baskes' arguments proceed from the premise that § 1724(b) grants $100,000 of insurance coverage to the owner or beneficiary of *all* trust estates. Trust insurance, however, is only afforded when it is determined funds are being held in a fiduciary capacity. In § 1728(a) of the NHA, the FSLIC is accorded express rule-making authority to define terms and to create classifications and exceptions in order to determine the extent of insurance coverage for trust estates. Nothing in the NHA specifies how the FSLIC is to determine that the fiduciary relationship required by § 1724(b) exists nor explains how to evaluate trust interests in order to apply the statutory limit.

Where Congress explicitly delegates authority to an agency to construe a statute through rulemaking, such regulation will be upheld unless it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." *Batterton v. Francis,* 432 U.S. 416, 424–26, 97 S.Ct. 2399, 2404–06, 53 L.Ed.2d 448 (1977) *citing* 5 U.S.C. § 706(2)(A, C). As noted earlier, the recordkeeping requirements were designed primarily to provide the FSLIC with access to an insured institution's records to allow a basis for prompt payment on the numerous accounts which must be processed upon default and second, to preclude post-default creation of separate trust accounts that would fraudulently increase FSLIC insurance coverage. The regulations in 12 C.F.R. § 564.2(b) were a reasonable response to the problem of ascertaining when an account is held in a fiduciary capacity. The promulgation of the recordkeeping requirements by the Board, as operating head of the FSLIC, was not arbitrary, capricious, an abuse of

discretion or contrary to the language or purpose of the NHA. Thus, no basis exists for invalidating 12 C.F.R. § 564.2(b).

Baskes' argument that the FSLIC is required by the NHA to look to the substance rather than form of an asserted trust account is based on a misreading of *FAIC Securities v. United States,* 595 F.Supp. 73 (D.D.C.1984), *aff'd* 768 F.2d 352 (D.C.Cir. 1985). In *FAIC,* the district court held that a regulation limiting insurance to $100,000 in the aggregate for all deposits made through a deposit broker was contrary to the NHA's primary reliance on beneficial ownership to determine coverage. *FAIC,* 595 F.Supp. at 77. Unlike the regulation in *FAIC,* 12 C.F.R. § 564.2(b) does not automatically aggregate all funds deposited for the benefit of third parties to the individual making the deposit for determining coverage. The recordkeeping rules merely set forth requirements for documenting the existence of a bona fide trust account. In fact, the district court in *FAIC* recognized the validity of recordkeeping requirements at issue in this case. *FAIC,* 595 F.Supp. at 77, n. 6. Thus, *FAIC* does not require the regulations to be held invalid.

Baskes also cites *Quilter v. Wendland,* 387 S.W.2d 440 (Civ.App.Tex.1965), for the proposition that failure to execute a signature card does not invalidate a contract between a savings association and a depositor. That case, however, dealt with the conditions necessary for the formation of a contract under Texas law between a depositor and a state-chartered savings institution. The issue was not, as it is here, the plaintiff's compliance with a federal regulation necessary to obtain separate insurance of trust accounts upon the default of a federally-insured thrift. Thus, *Quilter* does not advance Baskes' position. As such, Baskes is unable to show any common law or statutory basis for his argument that the recordkeeping requirements of 12 C.F.R. 564.2(b) contradict or undermine the NHA.

Next, Baskes argues that the FSLIC is an insurance company and is bound to con-

duct its business in accord with the standards of the private insurance business. Baskes contends that his noncompliance with 12 C.F.R. § 564.2(b) was not material to the risk the FSLIC agreed to insure and thus cannot be used as a reason for denying full coverage. Baskes mysteriously cites *North New York Savings Bank v. FSLIC*, 515 F.2d 1355 (D.C.Cir.1975) as support for this argument. Yet, nowhere in *North New York Savings Bank* does authority for such a proposition exist. Congress, in creating the FSLIC, intended that insurance payouts were to be governed by a special body of federal law and regulation. In § 1728(b) of the NHA, Congress granted the FSLIC authority to adopt regulations to define terms and to create classifications and exceptions for determining insurance coverage applicable to trust funds. Bookkeeping requirements were adopted to lessen the risk of loss to the FSLIC fund from fraudulently created relationships and to provide a basis for verifying the status of accounts for purposes of insurance settlement. Although 12 C.F.R. § 564.2(b) does not provide for an inquiry into the materiality of a record-keeping infraction, the regulation stands as a valid exercise of administrative authority which is neither arbitrary, capricious, an abuse of discretion, or contrary to the language or intent of the NHA.

■ Finally, Baskes argues that the FSLIC's motion for summary judgment should be denied because application of § 564.2(b) to preclude $100,000 of coverage for each account bears no reasonable relation to the central purpose for which the regulation was adopted. Baskes' argument, however, is misplaced. This court has already determined that the record-keeping requirements were a valid exercise of the regulatory authority granted in § 1728(b) of the NHA. Once the regulation passes this test, the fact that its application in a particular instance does not address the main purpose of the regulation is immaterial. To find an agency's application of a regulation arbitrary and capricious, the claimant must show the agency's standards were inconsistently applied in similar situations. *Illinois Bell Tel. Co. v. F.C.C.*, 740 F.2d 465 (7th Cir.1984). No such allegation is made by Baskes. As such, this court cannot find the FSLIC's application of 12 C.F.R. § 564.2(b) to Baskes' insurance claims to be without a rational basis. Since Baskes is unable to show the FSLIC's determinations were arbitrary, capricious, an abuse of discretion, or not in accordance with applicable law, FSLIC's motion for summary judgment as to Count I of Baskes' amended complaint is granted.

### B. Count II

In Count II Baskes requests a declaration that the conduct of Empire in maintaining account records for the two trust accounts was negligent and that the FSLIC, as receiver, be required to settle this negligence claim in Baskes' favor for $100,000. Alternatively, Baskes requests this court reverse the FSLIC's findings relating to the loss of insurance coverage sustained by Baskes due to Empire's alleged negligence in maintaining adequate records. The FSLIC motions this court to dismiss Count II asserting that no ground for subject matter jurisdiction exists.

■ Baskes first argues that language in 12 U.S.C. § 1725(c)(4) which states the FSLIC has the power "to sue and be sued" is an express grant of subject matter jurisdiction to hear his claims in Count II. Yet, similar arguments based on "sue and be sued" clauses in the NHA have been rejected on the ground such clauses merely affect a waiver of sovereign immunity rather than an affirmative grant of jurisdiction. *See Ames-Ennis Inc. v. Midlothian Ltd. Partnership*, 469 F.Supp. 939, 942 (D.Md. 1979), and cases cited therein. Even if § 1725(c)(4) could be interpreted to supply subject matter jurisdiction, it must be construed within the larger statutory framework set out by Congress for the liquidation of failed savings and loan institutions in the NHA. According to the recent decision of *North Mississippi Savings and Loan Ass'n. v. Hudspeth*, 756 F.2d 1096

(5th Cir.1985), such a possible grant of jurisdiction is limited by 12 U.S.C. § 1464(d)(6)(C) and 12 U.S.C. § 1729(d).

In *Hudspeth*, the Fifth Circuit addressed the issue of whether a district court had jurisdiction to adjudicate claims against a savings association which had been placed in FSLIC receivership. *Hudspeth*, 756 F.2d at 1099. The *Hudspeth* court reasoned that in passing 12 U.S.C. § 1464(d)(6)(C)[3] and 12 U.S.C. § 1729(d),[4] Congress intended the FSLIC's receivership powers to be subject only to the authority of the Board. *Hudspeth*, 756 F.2d at 1101–02. As the court explained, "Congress wanted the FSLIC to be able to act quickly and decisively in reorganizing, operating, or dissolving a failed institution, and intended that the FSLIC's ability to accomplish these goals not be interfered with by other judicial or regulatory authorities." *Id.* at 1101. The court ruled that all claims asserted against an association in FSLIC receivership must first be processed through the FSLIC's administrative claims procedure before judicial review under the APA could occur. *Id.* at 1102–03. Thus, the defendant's counterclaims against the insolvent savings association were dismissed for lack of subject matter jurisdiction since the defendant had not exhausted his administrative remedies prior to suing in federal district court. *Id.* at 1103.

Although *Hudspeth* did not expressly address the interrelationship of § 1725(c)(4), § 1729(d) and § 1464(d)(6)(C), application of the *Hudspeth* reasoning to any possible grant of jurisdiction in § 1725(c)(4) would lead to the same result. Indeed, a court adopting *Hudspeth* has ruled other provisions of the NHA ostensibly granting dis-

trict courts original jurisdiction to hear claims against the FSLIC is limited by § 1464(d)(6)(C) and § 1729(d) to review under the APA. *First American Savings Bank v. Westside Federal Savings and Loan Ass'n.*, 639 F.Supp. 93, 98–100 (W.D. Wash.1986) (12 U.S.C. § 1730(k)(1) when read in light of § 1464(d)(6)(C) and § 1729(d), did not provide subject matter jurisdiction prior to exhaustion of administrative remedies). Thus, even if § 1725(c)(4) could be interpreted as a grant of jurisdiction, such jurisdiction would be limited by the larger statutory framework requiring all claims made against the receivership estate to first be processed through the FSLIC's administrative claims procedure.

In the instant case, Baskes failed to assert a claim against Empire for its alleged negligence in maintaining account records during the administrative claims procedure before the FSLIC. Thus, under the rationale of *Hudspeth*, no jurisdiction exists under § 1725(c)(4) of the NHA. Similarly, since Baskes has failed to exhaust his administrative remedies before prosecuting this claim against the receivership estate in district court, no jurisdiction is provided by the APA. Accordingly, Baskes' negligence claim against Empire and the FSLIC as receiver is dismissed for lack of subject matter jurisdiction.[5]

■ Finally, as an alternative to the negligence claim, Baskes asks this court to reverse the FSLIC's insurance determination on the grounds that Empire was negligent in maintaining account records. Baskes asserts that (1) he has made the claim to the FSLIC that Empire failed to

---

**3.** 12 U.S.C. § 1464(d)(6)(C) states in relevant part:

Except as otherwise provided in this subsection, no court may ..., except at the instance of the [Board], restrain or affect the exercise of powers or functions of a conservator or receiver.

**4.** 12 U.S.C. § 1729(d) states in relevant part: In connection with the liquidation of insured institutions, the [FSLIC] shall have power ... to settle, compromise, or release claims in favor of or against the insured institutions,

and to do all other things that may be necessary in connection therewith, subject only to the regulation of the [Board]....

**5.** Although Baskes also cites the Declaratory Judgment Act as a basis for jurisdiction, courts interpreting this act have uniformly held that it does not confer an independent basis for subject matter jurisdiction. *See e.g., Potomac Passengers Ass'n. v. Chesapeake & Ohio Ry. Co.,* 520 F.2d 91, 97 (D.C.Cir.1975); *Trujillo v. Schweiker,* 558 F.Supp. 1058, 1061 (D.Col.1983).

maintain its records in accord with the recordkeeping regulations, and (2) the FSLIC made a specific determination as to that claim. Baskes thus contends jurisdiction is proper under the APA. The FSLIC argues Baskes' claim is subject to summary judgment in its favor for the same reasons as Count I. This court agrees.

As noted previously in this opinion, this court may only reverse the determination of the FSLIC if it is found to be arbitrary and capricious. If a reasonable basis for the FSLIC's decision exists in the record, this court is required to affirm even if it disagrees with the outcome. A review of the record below reveals that the FSLIC acknowledged Baskes' claim that Empire lost his records. The FSLIC responded by stating that it is required to rely largely on the records of the defaulted institution in determining adherence to the recordkeeping requirements. The FSLIC gave Baskes another opportunity to present evidence to substantiate his belief he executed a signature card for the RZ trust account and Empire negligently lost it. Baskes failed to present any additional evidence. Given the evidence before the FSLIC, this court cannot say the FSLIC's determination Baskes had failed to meet 12 C.F.R. 564.-2(b) is arbitrary and capricious. Thus, summary judgment is entered against Baskes on his alternate claim for relief in Count II.

### III. CONCLUSION

For the reasons stated herein, defendant's motion to dismiss and motion for summary judgment are granted, and plaintiff's claims are dismissed in their entirety.

IT IS SO ORDERED.