Earl W. McALLISTER, et al.

v.

FEDERAL SAVINGS AND LOAN
INSURANCE CORPORATION.

Civ. A. 88–572–B.

United States District Court,
M.D. Louisiana.

March 27, 1989.

Richard S. Dunn, Trial Atty., Watson,
Blanche, Wilson & Posner, Baton Rouge,
La., for plaintiffs.

John J. Gaupp, Trial Atty., Asst. U.S. Atty., Baton Rouge, La., Christine A. Wardell, Trial Atty., Thomas J. Segal, Assoc. Gen. Counsel, Colleen Bombardier, Asst. Gen. Counsel, Office of the General Counsel, Washington, D.C., for defendants.

## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

POLOZOLA, District Judge.

Earl W. McAllister, Inc. established a retirement plan ("Retirement Plan") for its employees in which Earl W. McAllister was the sole participant. All of the funds belonging to the retirement plan were held in a trust ("Retirement Trust"), of which Earl W. McAllister was the sole trustee. A portion of these trust funds was invested in two accounts at Community Savings & Loan Association ("Community"). One account was in the name of "Earl McAllister, Inc. Employee Pension Plan." The other was in the name of "Earl McAllister, Inc. Pension Plan." On June 20, 1986, the Federal Home Loan Bank Board determined that Community was insolvent and appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as sole receiver of Community. At the time Community was placed in receivership, Earl McAllister, Inc. Employee Pension Plan held $92,910.12 in one account (hereinafter referred to as Account #1), and Earl McAllister, Inc. Pension Plan held $25,094.66 in another account (hereinafter referred to as Account #2), for a total of $118,004.78. FSLIC determined that a total of $100,000 in the two accounts was insured. Plaintiffs requested a reconsideration of this decision. Reconsideration was granted and, in a June 15, 1987 decision, FSLIC reaffirmed its de-

termination that a total of $100,000 was insured, leaving $18,004.73 uninsured.

The plaintiffs, Earl W. McAllister, Betty L. McAllister, and Earl McAllister, Inc., have now filed this suit to recover the uninsured amounts in the plaintiffs' accounts. Cross-motions for summary judgment have been filed by the parties.

### I. Issues

This case presents three issues for the Court to decide:

(1) What standard should this Court apply in reviewing the decision of FSLIC to deny insurance coverage to plaintiffs?

(2) What federal regulations apply in this case to determine whether insurance coverage exists?

(3) Should FSLIC be estopped from claiming that the plaintiffs' accounts are not fully insured?

### II. Standard of Review

Plaintiffs maintain that the proper standard of review by a district court of a decision rendered by FSLIC on an insurance claim is de novo review.[1] The defendant contends that the plaintiffs' only basis for relief is under the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1977), which requires this Court to affirm FSLIC's decision unless FSLIC acted arbitrarily or capriciously.[2] The standard of review to be applied by the Court in this case is of no practical significance. In general, an agency's interpretation of its own rules is entitled to considerable deference.[3] Nevertheless, an agency interpretation must be rejected when it is plainly erroneous or inconsistent with its regula-

---

1. *Jugum v. Fed. Sav. & Loan Ins. Corp.,* 637 F.Supp. 1045 (W.D.Wash.1986), *reconsideration denied,* 646 F.Supp. 764 (1986); *Herbert v. Nat. Credit Union Admin. Bd.,* 663 F.Supp. 833 (E.D. Mo.1987).

2. *Godwin v. Fed. Sav. & Loan Ins. Corp.,* 806 F.2d 1290 (5th Cir.1987) (n. 4 reads: "In [*North Mississippi Savings and Loan Association v.] Hudspeth* [756 F.2d 1096 (5th Cir.1985)] we held that a de novo examination of the FSLIC's insurance determination is foreclosed by the

existence of administrative procedures that must be exhausted."); *York Bank & Trust v. Fed. Sav. & Loan Ins. Corp.,* 851 F.2d 637 (3rd Cir. 1988) *reh'g* and *reh'g en banc denied* (1988); *Baskes v. Fed. Sav. & Loan Ins. Corp.,* 649 F.Supp. 1358 (N.D.Ill.1986).

3. *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980).

tions.[4] Thus, this Court must simply decide whether FSLIC applied the proper regulations in the proper manner under the facts of this case.

### III. The Applicable Federal Regulations

■ FSLIC based its determination that only $100,000 of the deposits were insured on 12 C.F.R. § 564.10 (1988) which requires that "[a]ll trust estates for the same beneficiary ... created by the same settlor (grantor) shall be added together and insured up to $100,000 in the aggregate...." FSLIC concluded that the Earl McAllister, Inc. Employee Pension Plan was a trust created by Earl McAllister, Inc. for the benefit of Earl W. McAllister. Applying § 564.10, FSLIC aggregated the amounts deposited in each trust account and paid $100,000 which was the maximum insurance coverage for those two accounts.

Plaintiffs contend FSLIC erred in applying § 564.10 because the retirement trust established to hold pension funds was terminated by resolution of the Board of Directors of Earl McAllister, Inc. on December 31, 1985, and was not in effect when Community was placed in default. Plaintiffs further contend that if no trust was in existence on the date of bank's default, the funds in question could not be insured pursuant to § 564.10. Upon termination of the trust, plaintiffs maintain that the ownership of the accounts should be determined by reference to state community property law and not § 564.10 which pertains to trusts.

FSLIC concedes that the Retirement Plan was terminated on December 31, 1985. However, FSLIC contends that the Retirement Trust was not terminated at that time because Earl W. McAllister continued to act as trustee after December 31 and the money in the trust accounts was not disbursed. Thus, FSLIC contends that § 564.10 does apply because the Retirement Trust and the trust accounts were still in existence when Community was placed into receivership.

The Court finds that the Retirement Plan *and the Retirement Trust* were terminated by resolutions adopted by the Board of Directors of Earl McAllister, Inc. on December 20, 1985. Therefore, FSLIC erred in applying § 564.10 under the facts of this case.

The Retirement Plan provides in pertinent parts as follows:

Section 6.5:

The plan may be terminated by the Employers at any time by (1) formal action, in the manner described in Section 6.7 hereof, on the part of each Employer then a party to the plan specifying (a) that the plan is being terminated and (b) the date as of which the termination is to be effective.

Section 6.7:

Any formal action herein permitted or required to be taken by an Employer shall be ... if and when a corporation, by resolution of its board of directors or other governing board, or by written instrument executed by a person or group of persons who has been authorized by resolution of its board of directors or other governing board as having authority to take such action....

Paragraph 2 of Article IX of the Retirement Trust provides:

This agreement and trust may be terminated by the Employers at any time by delivering to the trustee evidence of the formal action, in the manner described in Paragraph 7 of Article VII hereof, on the part of each Employer then a party to this agreement and trust specifying that (a) the plan is being terminated or (b) contributions thereunder are being discontinued. This agreement and trust shall automatically terminate when no cash or other property remains in the trust.

Paragraph 7 of Article VII of the Retirement Trust provides in pertinent part as follows:

... any formal action herein permitted or required to be taken by an Employer shall be ... if and when a corporation, by resolution of its board of directors or

---

**4.** *United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977).

other governing board or by written instrument executed by a person or group of persons who has been authorized by resolution of its board of directors or other governing board as having authority to take such action. . . .

The Board of Directors of Earl McAllister, Inc. adopted the following two resolutions at its meeting held on December 20, 1985:

RESOLVED that the Retirement Plan for Employees of Earl McAllister, Inc. as effective January 1, 1982, be terminated effective December 31, 1985.

FURTHER RESOLVED that the President and other officers of the Corporation be and the same hereby are authorized to take such action as they may deem appropriate to effectuate the purposes of these resolutions.

Based on the foregoing provisions, it is clear that the Retirement Plan for Employees of Earl McAllister, Inc. was terminated by the Board of Directors of Earl McAllister, Inc. effective December 31, 1985. These resolutions satisfy the requirements for "formal action" which is set forth in Section 6.7 of the Retirement Plan and in Paragraph 7 of Article VII of the Retirement Trust. When the Plan was terminated as of December 31, 1985, the trust was also terminated as of that date in accordance with Paragraph 2 of Article IX of the Retirement Trust. Thus, the Retirement Trust was terminated prior to the time Community became insolvent on June 20, 1986.

When the plan and trust were terminated on December 31, 1985, the assets of the Retirement Trust were not distributed, but were withheld pending receipt of a favorable qualification letter from the Internal Revenue Service.[5] The mere fact that there was no distribution of benefits to plan participants pending receipt of a favorable qualification letter from the Internal Revenue Service does not alter the fact that both the Retirement Plan and the Retirement Trust were terminated on December 31, 1985. Ownership of the assets contained in the trust vested in the former plan participant, Earl W. McAllister, upon termination of the trust.[6] Therefore, the Court concludes that FSLIC should not have applied § 564.10 to determine the amount of insurance coverage in this case.

Plaintiffs contend that upon termination of the trust, state law should be applied to determine the ownership of trust assets. In this regard, plaintiffs claim that upon termination of the trust, the accounts at issue became owned in indivision by Earl W. McAllister and his wife, Betty L. McAllister, under Louisiana's community property law. Plaintiffs also argue that this husband-wife relationship was ascertainable from the records of Community and Earl McAllister, Inc. Finally, plaintiffs contend that since each spouse individually owns his or her undivided one-half interest in both accounts and since the total interest of each spouse in both accounts does not exceed $100,000, the total funds in both accounts should be fully insured.

In response to the plaintiffs' contentions, FSLIC argues that the husband-wife relationship between Mr. and Mrs. McAllister was not discernible from the records of Community and Earl McAllister, Inc. Alternatively, they contend that even if the relationship was ascertainable, 12 U.S.C. § 1724(b) (1980) and 12 C.F.R. § 564.3(a) (1988) apply to limit coverage to a total of $100,000. Section 1724(b) provides:

**5.** When a retirement plan is terminated, certain issues arise with respect to the qualification of the plan under Section 401(a) of the Internal Revenue Code. Such issues include whether the plan was intended to be permanent, whether all accrued benefits have become fully vested to the extent funded, and whether the assets of the plan have been properly applied.

**6.** Section 564.2(a) states that "[t]he rules for determining the insurance coverage of accounts in the same insured institution are set forth in the following provisions of this part. Insofar as rules of local law enter into such determinations, the law of the jurisdiction in which the insured institution's principal office is located shall govern." Community Savings & Loan Association's principal office is in Louisiana. Under Louisiana law, "[a] termination of a trust causes the dispositive provisions of the trust to achieve their ultimate effect." La.R.S. 9:2029 (1965).

Notwithstanding any other provision of law, two persons who are husband and wife shall have, with respect to accounts in an insured institution which are community property of such husband and wife and to the extent that such accounts are community property, not to exceed $100,000 of insurance with respect to such account or accounts in the sole name of the husband, not to exceed $100,000 of insurance with respect to such account or accounts in the sole name of the wife, and not to exceed $100,000 of insurance with respect to such an account or accounts in the sole name of both....

Section 564.3(a) provides that "[f]unds owned by an individual (or by the husband-wife community of which the individual is a member) and invested in one or more accounts in his own name shall be insured up to $100,000 in the aggregate." Thus, FSLIC argues that its decisions to limit the total insurance coverage to $100,000 was correct.

In response to the FSLIC's assertions, plaintiffs contend that § 1724(b) and § 564.3(a) do not apply because their accounts were not "in the sole name of the husband" as is required by the aforementioned provisions, but instead were in the name of "Earl McAllister, Inc. Employee Pension Plan", and "Earl McAllister, Inc. Pension Plan".

The initial question for the Court to decide is whether the records of Community and Earl McAllister, Inc. disclose the existence of a relationship which might provide a basis for additional insurance.[7] The Court finds that the records of Community and Earl McAllister, Inc. did disclose a husband-wife relationship between Earl W. McAllister and Betty L. McAllister. The signature card for one account was in the

name of "Mr. or Mrs. Earl McAllister". Earl W. McAllister and Betty L. McAllister also held other accounts at Community which were styled "Mr. or Mrs. Earl W. McAllister". Additionally, the records of Earl McAllister, Inc. disclosed the existence of a marital relationship between the parties. Thus, the requirements of § 564(a)(2) have been met.

The Court must now decide whether the husband-wife relationship provides a basis for additional insurance. The resolution of this issue depends on the applicability of § 1724(b) and § 564.3(a). Under § 1724(b), when community property is invested in three separate accounts—one in the husband's name, one in the wife's name, and one in the name of both—each account is separately insured up to $100,000.[8] Under § 564.3(a), funds owned by an individual or by the husband-wife community of which the individual is a member, and invested in one or more accounts *in his own name* are only insured up to $100,000 in the aggregate. Thus, if the husband invests $100,000 of community property in an account in his own name, and invests $100,000 of community property in another account in his own name, only a total of $100,000 is insured. Similarly, if the husband invests $100,000 of community property in one account in his name, and $100,000 of his separately owned property in another account in his name, only a total of $100,000 is insured.[9]

The plaintiffs contend that § 1724(b) and § 564.3(a) are not applicable because the accounts in question were not "in the sole name of the husband," or "in his own name" as is required by these provisions, but instead were in the names of "Earl McAllister, Inc. Employee Pension Plan" and "Earl McAllister, Inc. Pension

---

7. 12 C.F.R. § 564.2(b)(2) provides that "[i]f the account records of an insured institution disclose the existence of a relationship which may provide a basis for additional insurance, the details of the relationship and the interests of other parties in the account must be ascertainable either from the records of the association or the records of the account holder maintained in good faith and in the regular course of business."

8. See Example 1 in Appendix to Part 564. Under Example 1, if husband and wife maintain three accounts containing community property—one in the husband's name, one in the wife's name, and one in the name of both—each account is insured up to $100,000.

9. See Example 2 in Appendix to Part 564.

Plan". This contention is without merit. When the Retirement Plan and Retirement Trust were terminated by resolution of Earl McAllister, Inc., the funds which belonged to the plan and which were kept in trust became the property of Earl W. McAllister, who was the sole participant in the plan. The funds in these accounts also became the community property of Earl W. McAllister and Betty L. McAllister. The plaintiffs cannot avoid the application of § 1724(b) and § 564.3(a) merely because the accounts were never changed to reflect the ownership of Mr. and Mrs. McAllister. It is clear that at the time Community collapsed, the accounts in question were part of the husband-wife community existing between Earl W. McAllister and Betty L. McAllister. The mere fact that the accounts remained registered in the names of "Earl McAllister, Inc. Employee Pension Plan" and "Earl McAllister, Inc. Pension Plan" cannot defeat the applicability of § 1724(b) and § 564.3(a). This conclusion is clearly supported by the Appendix to Part 564 which reads:

All funds owned by an individual (or by the husband-wife community of which the individual is a member) and invested by him in one or more individual accounts are added together and insured to the $100,000 maximum. *This is true whether the accounts are maintained in the name of the individual owning the funds, in the name of his agent or nominee, or in the name of a guardian, conservator or custodian holding the funds for his benefit.* (emphasis added)

Thus, the Court finds that § 1724(b) and § 564.3(a) apply under the facts of this case. The plaintiffs' contention that § 1724(b) and § 564.3(a) do not apply because the accounts were in the names of "Earl McAllister, Inc. Employee Pension Plan" and "Earl McAllister, Inc. Pension Plan" is without merit.

As noted previously, when community property is placed in three separate accounts—one in the husband's name, one in the wife's name, and one in the name of

both—each account is insured up to $100,000. However, if community property is placed in accounts which are all in the husband's name, only a total of $100,000 is insured. Thus, the Court must decide whether or not the community property in this case was placed in accounts *in the name* of Earl W. McAllister. The problem facing the Court is that the accounts in question were left in the name of the pension plans and were not changed to reflect the ownership interests of the McAllisters.[10] This pension plan was created by Earl McAllister, Inc. for the benefit of Earl W. McAllister. Earl W. McAllister was the sole participant in this retirement plan. The funds belonging to the retirement plan were held in a trust for which Earl W. McAllister was the sole trustee. For these reasons the Court finds that even though the accounts were in the names of "Earl McAllister, Inc. Employee Pension Plan" and "Earl McAllister, Inc. Pension Plan", they were in fact in the name of and belonged to Earl W. McAllister. Under § 564.3(a), "[f]unds owned by an individual (or by the husband-wife community of which the individual is a member) and invested in one or more accounts in his own name shall be insured up to $100,000 in the aggregate." Thus, insurance coverage in this case is limited to a total of $100,000.

Finally, the Court must determine whether the federal regulation on "joint accounts" allows a total coverage of more than $100,000. 12 C.F.R. § 564.9 "Joint accounts" provides, in pertinent part:

(a) *Separate insurance coverage.* Accounts owned jointly, whether as joint tenants with right of survivorship, as tenants by the entireties, as tenants in common, or by husband and wife as community property, shall be insured separately from accounts individually owned by the co-owners.

(b) *Qualifying joint accounts.* A joint account shall be deemed to exist for the purpose of insurance of accounts only if

---

**10.** Specifically, the accounts were in the names of "Earl McAllister, Inc. Employee Pension Plan" and "Earl McAllister, Inc. Pension Plan".

each co-owner has personally executed an account signature card and possesses withdrawal rights....

(c) *Failure to qualify.* An account owned jointly which does not qualify as a joint account for purposes of insurance of accounts shall be treated as owned by the named persons as individuals and the actual ownership interest of each such person in such account shall be added to any other accounts individually owned by such person and insured up to $100,000 in the aggregate.

Plaintiffs contend that the above regulation provides insurance coverage in excess of $100,000 for the accounts involved in this case. The plaintiffs' argument is as follows: (1) the accounts in question are "[a]ccounts owned jointly" as described in § 564.9 because they are part of the community between Mr. and Mrs. McAllister; (2) these accounts do not qualify as "joint accounts" as described in § 564.9(b) because signature cards were not executed by both co-owners; (3) under § 564.9(c) "[a]n account owned jointly which does not qualify as a joint account ... shall be treated as owned by the named persons as individuals and the actual ownership interest of each such person in such account shall be added to any other accounts individually owned by such person and insured up to $100,000 in the aggregate." Therefore, plaintiffs contend each spouse's actual ownership interest in each account should be totalled and insured up to $100,000. Since the total interest of each spouse in both of the accounts does not exceed $100,000, plaintiffs argue that all amounts contained in both accounts should be fully insured.

The Court finds that plaintiffs' argument is without merit. The Court's adoption of plaintiffs' interpretation of § 564.9 would destroy the general rule that funds owned by the husband-wife community and invest-

ed in several accounts in one spouse's name are insured up to $100,000 in the aggregate. Under plaintiffs' interpretation of § 564.9, a spouse could invest community funds of over $100,000 in two separate accounts in his name, fail to execute a signature card, and thereby obtain insurance coverage of over $100,000. Clearly this is not the intent of § 564.9. The intent of § 564.9 is to allow accounts jointly owned, which are qualified as joint accounts, to be insured separately from accounts individually owned by each spouse.[11] Thus a qualified joint account would be insured up to $100,000, and accounts individually owned by each spouse would also be insured up to $100,000. In the absence of qualification, the account jointly owned by spouses is *not* separately insured from accounts individually owned by the spouses. The account jointly owned is added to accounts individually owned by each spouse and the total is insured for $100,000. Clearly this is the result intended by § 564.9(c), although the wording of that provision leaves something to be desired.

In summary, the Court rejects the contention of plaintiffs that § 564.9 allows for insurance coverage in excess of $100,000. The Court also holds that trust regulation § 564.10 does not apply in this case, as the Retirement Trust established by Earl McAllister, Inc. was terminated and did not exist at the time of the insolvency of Community. Finally, the Court finds that § 1724(b) and § 564.3(a) are applicable, and limit insurance coverage in this case to a total of $100,000.

## IV. Does the Doctrine of Equitable Estoppel Apply?

▇ The final question for this Court to decide is whether FSLIC should be estopped from claiming that plaintiffs' account were not fully insured. Plaintiffs

---

**11.** See Example 1 in Appendix to Part 564. Under Example 1, if husband and wife maintain three accounts—one in the husband's name containing his separately-owned property, one in the wife's name containing her separately-owned property, and one in the name of both containing community property—each account is insured up to $100,000, but only if the ac-

count containing community property qualifies as a joint account under 564.9(b). If it does not qualify, then the account is treated as owned by husband and wife as individuals, and the ownership interest of each spouse in the community property account is added to the accounts individually owned by each spouse and insured up to $100,000 in the aggregate.

contend that when Earl W. McAllister opened the two accounts at issue, he was assured by representatives of Community that each account was insured up to $100,-000. Since brochures produced by FSLIC invited account owners to inquire about insurability of accounts, plaintiffs contend that FSLIC made the employees of Community its agents, and should be bound by the employees' representations through the doctrine of equitable estoppel. The Court finds that plaintiffs' argument is without merit.

In its decision of reconsideration, FSLIC stated:

> Bank Board pronouncements make clear that the FSLIC is bound to provide coverage only in accordance with applicable statutes and regulations. The Bank Board advised savers and accountholders of this principle in Resolution No. 21002 adopted November 2, 1967:
>
> > [N]o insured institution or any other person may by any representations or interpretations affect the extent of insurance of accounts coverage provided by Title IV of the National Housing Act, the rules and regulations for Insurance of Accounts, and the official interpretative and explanatory material adopted by the Board and published in the *Federal Register....*
>
> 32 Fed.Reg. 18,122, 18,122 (1967). The Bank Board reaffirmed this principle as to representations concerning insurance coverage in Resolution No. 85–286a, dated April 17, 1985, by adopting as part of the proposed revisions to Part 564 of the Insurance Regulations an amendment which states:
>
> > No opinions, representations, or other statements concerning the insurance coverage afforded in this part or in Title IV of the National Housing Act, whether made by an insured institution or any other person, ... shall be considered to have any binding effect upon the Corporation or the Board. All opinions, statements, and other representations made by employees of the Board or Corporation or any publication, other than pertinent resolutions

of the Board, this Part, and the Appendix to Part 564, are advisory only.

> 50 Fed.Reg. 19,185, 19,194 (1985). *See* 52 Fed.Reg. 8611, 8612 (1987).
>
> The courts have determined that even representations made by agents of the insuring agency are not binding. In *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380 [68 S.Ct. 1, 92 L.Ed. 10] (1947), the Supreme Court held that a federal government insurance agency could not be bound by representations of its agents as to insurance coverage that were contrary to regulations, whether or not members of the public had justifiably relied upon such representations. Moreover, the Court of Appeals for the Seventh Circuit, citing the principle of *Merrill, supra,* held that the FSLIC's funds are protected by the law even where its agents may have caused people to misunderstand the law. *Michals v. Federal Savings and Loan Insurance Corp.*, 413 F.2d 144, 148 (7th Cir.1969). Thus, any representations you may have received from employees of Community fail to extend insurance coverage beyond that clearly provided in applicable statutes and regulations.

In *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), the Supreme Court found that estoppel *may* apply against the U.S. Government when a private party can demonstrate that the traditional elements of estoppel are present. The "party claiming the estoppel must have relied on its adversary's conduct 'in such a manner as to change his position for the worse' and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." 104 S.Ct. at 2223. The Court finds that the McAllisters were not reasonable in relying upon the representations of Community's employees. Plaintiffs made no attempt to have the question resolved by FSLIC, but instead were satisfied with the opinion of Community employees. The reasonableness of the reliance is also undermined by the fact that the advice was

oral. In addition, it is doubtful that the representatives of Community were "agents" of FSLIC, so that their actions would bind FSLIC. Clearly the representatives of Community had no actual authority to bind FSLIC. Plaintiffs might argue that the Community employees had apparent authority. The essential elements of apparent authority are: acts by the principal, reasonable reliance by a third person, and a change of position to his detriment.[12] The Court finds that plaintiff has failed to produce sufficient evidence to establish that Community had apparent authority to bind FSLIC under the facts of this case. For the above reasons, the Court finds the FSLIC is not bound by the representations of Community employees because of the doctrine of equitable estoppel.

Therefore:

IT IS ORDERED that the Federal Savings and Loan Insurance Corporation for summary judgment is GRANTED, and the motion of the plaintiffs Earl W. McAllister, Betty L. McAllister, and Earl McAllister, Inc. for summary judgment is DENIED.

Judgment shall be entered dismissing plaintiffs' suit with prejudice at plaintiffs' costs.

12. 2A C.J.S. Agency §§ 161–163 (1972).